626 A.2d 595

Sarah A. KRYESKI and Ronald A. Kryeski,
Her Husband, Appellants,

v.

SCHOTT GLASS TECHNOLOGIES, INC. a Corporation.

Superior Court of Pennsylvania.

Argued March 10, 1993.

Filed June 14, 1993.

106

Ruth S. Borland, Wilkes–Barre, for appellants.

John J. Myers, Pittsburgh, for appellee.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the September 15, 1992 order granting appellee Schott Glass Technologies' motion for summary judgment and dismissing all counts of appellants', Sarah Kryeski and Ronald Kryeski, complaint. Appellants present the following six issues for our review:

A. DID THE COURT BELOW ERR IN FINDING THAT THE PLEADINGS AND THE EVIDENCE OF RECORD FAILED TO INDICATE THAT A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER MS. KRYESKI WAS DISCRIMINATED AGAINST BASED ON HER SEX?

B. DID THE COURT BELOW ERR IN FAILING TO FIND THAT THE APPELLEE EMPLOYER COULD BE HELD LIABLE FOR THE TORTIOUS ACTS OF THE EMPLOYEE DIRECTED AT MS. KRYESKI, UNDER THE THIRD PARTY ATTACK EXCEPTION OF THE WORKERS' COMPENSATION ACT?

C. DID THE COURT BELOW ERR IN FINDING THAT THE SEXUAL HARASSMENT AND RETALIATORY BEHAVIOR BY THE APPELLEE EMPLOYER WERE NOT SUFFICIENTLY OUTRAGEOUS CONDUCT AS A MATTER OF LAW TO SUPPORT MS. KRYESKI'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS?

D. DID THE COURT BELOW ERR IN FINDING THAT MS. KRYESKI'S ALLEGATIONS OF LIBEL AND SLANDER ATTRIBUTED TO THE APPELLEE EMPLOYER (COUNT IV OF COMPLAINT) IN WHICH MS. KRYESKI WAS LABELED AS "CRAZY AND EMOTIONALLY UNSTABLE" WERE INCAPABLE OF BEARING A DEFAMATORY MEANING?

E. DID THE COURT BELOW ERR IN FINDING THAT MS. KRYESKI HAS FAILED TO DEMONSTRATE THE ELEMENT OF PUBLICITY IN HER CLAIM OF INVASION OF PRIVACY?

F. DID THE COURT BELOW ERR IN GRANTING SUMMARY JUDGMENT REGARDING RONALD KRYESKI'S CLAIM FOR LOSS OF CONSORTIUM IN LIGHT OF THE VALIDITY OF SARAH KRYESKI'S CLAIMS OF PERSONAL INJURY, SEVERE EMOTIONAL DISTRESS, LIBEL AND SLANDER, AND INVASION OF PRIVACY?

Appellants' Brief at 3. for the following reasons, we affirm.

The present action arose as a result of several experiences at appellant Sarah Kryeski's workplace. The incidents involved an unsolicited sexual advance from Dr. Alex Marker, appellant's laboratory supervisor; an affair between appellant's co-worker Christine Yordy and Robert Scheller, appellant's immediate supervisor; and derogatory comments made by Christine Yordy about appellant.

On June 19, 1989, appellant filed a complaint with the Pennsylvania Human Relations Commission. On September 15, 1989, the Commission held a fact-finding conference, but no subsequent action was taken. On February 8, 1991, appellants filed an eight-count complaint against appellee alleging sexual harassment and discrimination, personal injury, intentional infliction of emotional distress, conspiracy, libel and slander, invasion of privacy, and loss of consortium and seeking punitive damages. On January 18, 1991, the trial court granted appellee's preliminary objections in the nature of a demurrer to appellants' civil conspiracy count and appellee's motion for a more specific pleading as to appellants' libel and slander count. In accordance with the court's order, appellants filed an amended six-count complaint. On April 30, 1991 and June 14, 1991, appellee deposed appellant Sarah Kryeski. On March 12, 1992, appellee filed a motion for summary judgment as to all six counts of appellants' complaint. The trial court granted summary judgment as to all counts on September 15, 1992. This timely appeal followed.

Our standard of review of an order granting summary judgment is well-settled. Summary judgment may be properly entered only if "the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.Civ.P. 1035(b).

The moving party has the burden of persuading the court that no genuine issues exist as to the material facts. Summary judgment may be entered only where the case is free from doubt. *Hower v. Whitmak,* 371 Pa.Super. 443, 445, 538 A.2d 524, 525, *allocatur denied,* 522 Pa. 584, 559 A.2d 527 (1988). In passing upon a motion for summary judgment, moreover, a court must examine the record in the light most favorable to the non-moving party. Any doubt must be resolved against the moving party. *French v. United Parcel Service,* 377 Pa.Super. 366, 371, 547 A.2d 411, 414 (1988); *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140–41, 476 A.2d 928, 930 (1984); *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 500, 450 A.2d 36, 38 (1982).

*Garcia v. Savage,* 402 Pa.Super. 324, 328, 586 A.2d 1375, 1377 (1991) (citing *Laventhol & Horwath v. Dependable Insurance Associates, Inc.,* 396 Pa.Super. 553, 558, 579 A.2d 388, 390 (1990)). We will overturn a trial court's entry of summary judgment only if there has been an error of law or clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988). With these principles in mind, we proceed to examine whether summary judgment was properly granted.

## *I.*

Appellants first assert that the trial court erred in granting summary judgment on the claim for sexual discrimination. Appellants contend that appellee engaged in actions in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* They claim that they have presented evidence of a discriminatory and "sexually hostile" work environment. This claim is meritless.

"A prima facie case of discrimination under PHRA is established by proving that the complainant is a member of a

protected class, has suffered adverse employment action, and that others not in the class have been treated differently." *Burns Intern. Sec. v. Hum. Rel. Com'n,* 119 Pa.Commw. 418, 423, 547 A.2d 818, 820 (1988). Appellants' discrimination claim is twofold.

■ First, appellant Sarah Kryeski contends that she was discriminated against with respect to the terms and conditions of her employment based on her refusal to accede to sexual advances made by her supervisor, Dr. Marker, at a party in July, 1987. After reviewing this claim in the context of appellant's deposition testimony, we find no issue of material fact that would warrant further proceedings. At her deposition, appellant admitted that "[she and Dr. Marker] spoke about it at work, but I never felt he held it against me." N.T. 4/30/91 at 48. She stated that during a later conversation with Dr. Marker, she told him that "I know what he had tried, and I admired that he never did anything like that or tried anything like that at work." N.T. at 56. She admitted that since July 10, 1987, Dr. Marker had not touched her or made a sexual advance and that she and Dr. Marker had no problems working together. N.T. at 57. Thus, Ms. Kryeski has not demonstrated that a genuine issue exists that she suffered retaliation for her refusing sexual advances of Dr. Marker.

■ As a second basis for her discrimination claim, appellant asserts that she was discriminated against because of favoritism displayed toward her co-worker whom appellant alleges was having an affair with a supervisor. This allegation alone, however, does not give rise to a claim for gender discrimination. No Pennsylvania state court has yet reviewed a so-called "paramour" sex discrimination allegation. However, the subject has been discussed in the federal courts, and Pennsylvania courts may look to Title VII precedents in interpreting the Pennsylvania statute. *Chmill v. City of Pittsburgh,* 488 Pa. 470, 491, 412 A.2d 860, 871 (1980) ("Human Relations Act should be construed in light of 'principles of fair employment law which have emerged relative to the federal

[statute]' ") (citation omitted)). Accordingly, we will examine the relevant case law.

In *Miller v. Aluminum Co. of America*, 679 F.Supp. 495 (W.D.Pa.1988), *aff'd*, 856 F.2d 184 (3d Cir.1988), the plaintiff brought an action similar to the instant one. Miller claimed that her supervisor discriminated against her on the basis of sex by showing favoritism toward another technician, Ms. Hollihan, who was having an affair with the plant manager. Miller did not assert that any of her supervisors conditioned employment benefits on her submission to sexual advances. The district court, following the lead of the Court of Appeals for the Second Circuit, held that "[a]s a matter of law, these assertions do not state a Title VII claim.... [P]referential treatment on the basis of a consensual romantic relationship between a supervisor and an employee is not gender-based discrimination." *Id.* at 501. The court reasoned that to hold otherwise would underestimate the essential element of disparate treatment based on gender as "male employees in Miller's workplace shared with her the same disadvantage relative to Ms. Hollihan." *Id. See also Candelore v. Clark County Sanitation Dist.*, 752 F.Supp. 956, 959–61 (D.Nev.1990), *aff'd*, 975 F.2d 588 (9th Cir.1992) (claims of preferential treatment of paramour and harassment for complaining of such treatment not actionable; "preferential treatment of a paramour, while perhaps unfair, is not discrimination on the basis of sex"). *Cf. Erickson v. Marsh & McLennan*, 117 N.J. 539, 569 A.2d 793 (1990) (in reverse discrimination case, claim that male employee was discharged so that his supervisor's paramour could be promoted combined with single incident of replacing male co-worker with female was insufficient to state claim under New Jersey Law Against Discrimination; consensual, non-coercive relationship between co-worker and supervisor alone does not give rise to hostile environment sexual harassment claim).[1]

1. Appellants contend that *Miller* and *Erickson* are inapplicable to the instant situation because in those "paramour" cases, the plaintiffs did not allege that any of their supervisors conditioned employment benefits on their submission to sexual advances. However, as discussed previously, appellants do not demonstrate that Ms. Kryeski's supervi-

Appellants, nonetheless, rely on *Drinkwater v. Union Carbon Corporation*, 904 F.2d 853 (3d Cir.1990) for the proposition that an office relationship may create a hostile atmosphere giving rise to a cause of action for gender discrimination. Appellants' reliance is misplaced. The *Drinkwater* court suggested that a plaintiff may be able to show that the consensual relationship created "an oppressive and intolerable environment" which discriminates against women. However, the court found no cause of action in the case before it as there was no evidence that the individuals "flaunted the romantic nature of their relationship ... or that these kinds of relationships were prevalent at [Union Carbon.]" *Id.* at 862. Thus, the court concluded that the plaintiff's sexual harassment claim based on the existence of a hostile environment could not survive. Similarly, appellants have not demonstrated that such relationships were prevalent at Schott Glass Technologies as Ms. Kryeski has testified that she is aware of only the Yordy–Scheller affair and has done no more than make remote references to the effect of that relationship on the environment at Schott Glass Technologies. *See Drinkwater* at 861. Accordingly, there is insufficient evidence for appellants to survive summary judgment on the count for sex discrimination.

## II.

Appellants next contend that the trial court erred in failing to find that appellee could be held liable for the tortious acts of its employee directed at appellant under the "third party attack" exception of the Workers Compensation Act. We disagree.

The "third party attack" exception of 77 P.S. § 411(1) provides that: "The term 'injury arising in the course of his employment' ... shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment." When the "third party attack" exception applies, "the employee is permitted to

sors conditioned her employment on her submission to sexual advances.

maintain a common-law action against his employer ..."
*Brooks v. Marriott Corp.*, 361 Pa.Super. 350, 356, 522 A.2d
618, 621 (1987) (citing *McBride v. Hershey Choc. Corp.*, 200
Pa.Super. 347, 188 A.2d 775 (1963); *Mike v. Borough of
Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980)).

In granting summary judgment, the trial court preliminarily
accepted appellants' argument that the "third party attack"
exception of the Workers Compensation Act applied because
the conduct of appellee's employees was outside the scope of
their employment. However, the court then determined that
appellee could not be held liable for the personal injury claim
under appellants' proposed theory of respondeat superior.

 Appellants do not challenge the trial court's conclu-
sion that they could not succeed under a theory of respondeat
superior. Instead, appellants assert that appellee is directly
liable for its negligence in failing to take precautions neces-
sary to prevent foreseeable harm by a third party rather than
vicariously liable for the actions of its servant under the
respondeat superior theory discussed by the trial court. How-
ever, this is the first time that appellants have raised the issue
of appellee's direct negligence. Prior to this appeal, appel-
lants have proceeded solely under the theory of respondeat
superior. *See* Plaintiff's Brief in Opposition to The Defen-
dant's Motion for Summary Judgment, at 6; Complaint ¶¶ 75,
78. Matters raised for the first time on appeal are not
properly preserved for appellate review and will not be consid-
ered. *See, e.g., Commonwealth v. National Fed. of the Blind*,
471 Pa. 529, 536, 370 A.2d 732, 736 (1977); *Kimmel v. Somer-
set County Commissioners*, 460 Pa. 381, 384, 333 A.2d 777, 779
(1975) ("It is a fundamental principle of appellate review that
we will not reverse a judgment or decree on a theory that was
not presented to the trial court."). As appellant did not
present the issue of direct negligence to the trial court, that
issue is waived.

### III.

Appellants next contend that the trial court erred in finding
that the sexual harassment and retaliatory behavior by appel-

lee were not sufficiently outrageous conduct as a matter of law to support appellants' claim of intentional infliction of emotional distress. This claim is meritless.

■ In order to sustain a claim for intentional infliction of emotional distress, the plaintiff must demonstrate that by extreme and outrageous conduct, the defendant intentionally or recklessly caused the plaintiff severe emotional distress. *Motheral v. Burkhart,* 400 Pa.Super. 408, 422, 583 A.2d 1180, 1188 (1990); *Strain v. Ferroni,* 405 Pa.Super. 349, 359, 592 A.2d 698, 703 (1991). " '[I]t is extremely rare to find conduct in the employment context that will give rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.' " *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1487 (3d Cir. 1990) (quoting *Cox v. Keystone Carbon,* 861 F.2d 390, 395 (3d Cir.1988)). The general rule is that "sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action.... '[T]he only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.' " *Id.* (quoting *Cox*).

■ In this case, although appellant Sarah Kryeski states in her brief that she suffered retaliation for refusing Dr. Marker's sexual advances, her own sworn testimony directly refutes this. As we pointed out earlier, appellant admitted that she never felt that Dr. Marker "held it against [her]." N.T. 4/30/91 at 48. Significantly, she also admitted that since July 10, 1987, Dr. Marker had not touched her or made a sexual advance and that she and Dr. Marker had no problems working together. N.T. at 57. As there is no issue of material fact regarding whether there was any retaliation on the part of Dr. Marker against Ms. Kryeski, the trial court did not err in granting summary judgment in favor of appellee on appellant's claim for intentional infliction of emotional distress.

## IV.

Appellants next contend that the trial court erred in finding that the statement forming the basis of appellants' defamation count is incapable of bearing a defamatory meaning. This claim also lacks merit.

The basis of appellants' defamation claim is a statement purportedly made by Ms. Yordy to a co-worker of appellant. Appellant Sarah Kryeski testified that Helen Yuhas told her that Ms. Yordy had stated to either Helen Yuhas or Helen Yuhas's husband, friends of appellant, that appellant was crazy and emotionally unstable. N.T. 4/30/91 at 138, N.T. 6/14/91 at 104.

To state a cause of action for defamation, a plaintiff has the burden of proving (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of any conditional privilege. 42 Pa.C.S. § 8343. Whether the challenged statements are capable of having a defamatory meaning is a question of law for the court to determine in the first instance. *Cashdollar v. Mercy Hosp. of Pittsburgh,* 406 Pa.Super. 606, 616, 595 A.2d 70, 75 (1991); *Zartman v. Lehigh County Humane Soc.,* 333 Pa.Super. 245, 250, 482 A.2d 266, 268 (1984). "A statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Zartman.*

Pennsylvania courts have held that certain types of communications, although undoubtedly offensive to the subject, do not rise to the level of defamation. For example, expressions of opinion are not actionable. *Baker v. Lafayette College,* 350 Pa.Super. 68, 78, 504 A.2d 247, 252 (1986), *aff'd,* 516 Pa. 291, 532 A.2d 399 (1987). Likewise, statements which are merely annoying or embarrassing or "'no more than rhetorical hyperbole'" or "'a vigorous epithet'" are not de-

famatory. *Redding v. Carlton,* 223 Pa.Super. 136, 139, 296
A.2d 880, 881 (1972) (citations omitted). *See also Savitsky v.
Shenandoah Valley Pub.,* 389 Pa.Super. 176, 183, 566 A.2d
901, 905 (1989); W. Prosser & W. Keeton, The Law of Torts
§ 111, at 776 (4th ed. 1984) ("A certain amount of vulgar
name-calling is tolerated, on the theory that it will necessarily
be understood to amount to nothing more.").

We find no error in the trial court's conclusion that
the alleged statements by one employee to another that
appellant was "crazy" were not defamatory. Similar state-
ments have been found not to rise to the level of defamation.
*See, e.g., Fram v. Yellow Cab Co. of Pittsburgh,* 380 F.Supp.
1314 (W.D.Pa.1974) (use of words "paranoid" and "schizo-
phrenic" not defamatory where plaintiff failed to meet burden
of proving that the words referred to actual psychological
infliction); *Pease v. International Union of Operating Engi-
neers Local 150,* 208 Ill.App.3d 863, 153 Ill.Dec. 656, 567
N.E.2d 614 (1991) (statement to press concerning the plaintiff:
"He's dealing with half a deck, did you know that? I think
he's crazy."; court stated: "Words that are mere name calling
or found to be rhetorical hyperbole or employed only in a
loose, figurative sense have been deemed nonactionable");
*Bratt v. International Business Machines Corp.,* 392 Mass.
508, 467 N.E.2d 126 (1984) (courts have refused to hold
defamatory on its face or defamatory at all an imputation of
mental disorder which is made in an oblique or hyperbolic
manner); *McGowen v. Prentice,* 341 So.2d 55 (La.App.1976)
(school principal stated to the plaintiff, a teacher, in reference
to a second teacher whose conduct the plaintiff had been
defending, "that's why you understand her so well, because
you all are both nuts" was not actionable; "casual remarks
made in informal conversation, even if they include unflatter-
ing words, do not constitute actionable defamation").

In the instant case, the statement made by Ms. Yordy was
not meant in the literal sense. It was no more than "a
vigorous epithet" in response to Ms. Kryeski's accusations
about Ms. Yordy's affair and her promotions. Moreover, as
stated earlier, a necessary factor in establishing defamation is

the understanding by the recipient of its defamatory meaning. Appellant conceded that the Yuhases did not treat appellant any differently after hearing the statement about appellant and that Mrs. Yuhas indicated that she knew appellant was not crazy. N.T. 6/14/91 at 105, N.T. 4/30/91 at 139. Accordingly, the trial court did not err in granting summary judgment on appellants' claim for defamation.

## V.

Appellants' claim for invasion for privacy is also premised on the statements made by Ms. Yordy to the Yuhases that Sarah Kryeski is "crazy" and "emotionally unstable." Appellants contend that the trial court erred in finding that Ms. Kryeski failed to demonstrate the element of publicity in her claim for invasion of privacy. We disagree.

A necessary element of the tort of invasion of privacy is that false information be given "publicity." *Neish v. Beaver Newspapers, Inc.*, 398 Pa.Super. 588, 598, 581 A.2d 619, 624 (1990); *Curran v. Children's Service Center of Wyoming County*, 396 Pa.Super. 29, 38, 578 A.2d 8, 12 (1990); Restatement (Second) of Torts § 652E. "Publicity" for these purposes " 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.' " *Curran* (quoting Restatement (Second) of Torts § 625E, comment b).

Appellants fall far short of showing the required element of publicity. Appellants have not provided any factual basis that would allow us to conclude that Ms. Yordy made derogatory statements about Mrs. Kryeski to anyone other than the Yuhases.[2] In fact, they concede that Ms. Kryeski only heard about the statements from Ms. Yuhas. According-

2. Appellants, nevertheless, claim that they have demonstrated publicity because Ms. Kryeski testified that Ms. Yordy acted as the "godmother" or "party mother" to many new employees at Schott Glass and these employees would not speak to Mrs. Kryeski. Appellants ask us to infer publicity from this behavior. However, the law requires more than this type of unsubstantiated allegation.

ly, the trial court properly dismissed the claim for invasion of privacy.

## *VI.*

Finally, appellants argue that the trial court erred in granting summary judgment regarding Ronald Kryeski's claim for loss of consortium. In light of our affirmance of the previous issues, appellants cannot succeed on the derivative claim for loss of consortium. *See Scattaregia v. Shin Shen Wu,* 343 Pa.Super. 452, 455, 495 A.2d 552, 554 (1985) (loss of consortium action is derivative, its success is dependent upon injured spouse's right to recover).

For the foregoing reasons, we affirm the order granting summary judgment.

Affirmed.