691 A.2d 476

Louise HOY

v.

Dominick ANGELONE, Gregory Thomas and Village Super Market, Inc. d/b/a Shop–Rite of Easton.

Appeal of VILLAGE SUPER MARKET INC. d/b/a Shop–Rite of Easton and Dominick Angelone.

Superior Court of Pennsylvania.

Argued Dec. 11, 1996.

Filed March 12, 1997.

598

600

602

Richard E. Stabinski, Philadelphia, for appellants.

John R. Vivian, Jr., Easton, for appellee.

Before McEWEN, P.J., and CAVANAUGH and TAMILIA, JJ.

CAVANAUGH, Judge.

This is an appeal from two judgments entered following jury verdicts in favor of appellee-plaintiff Louise Hoy in an action for sexual harassment. Judgment was entered in favor of Hoy and against her employer appellant-defendant Village Super Market, Inc. d/b/a Shop–Rite of Easton ("Shop–Rite") in the amount of $309,838.00.[1] Judgment was also entered in favor of Hoy and against appellant-defendant Dominick Angelone in the amount of $25,000.00. After careful review and for

---

1. The judgment entered against Shop–Rite reflects the damages awarded by the jury plus interest.

the reasons which follow, we affirm in part and reverse in part the judgment entered against Shop–Rite, and reverse the judgment entered against Angelone.

Appellee was employed by Shop–Rite from September of 1972 thru August of 1995, as the only female meat wrapper in the meat department. Appellant Angelone began his employment with Shop–Rite in 1972 as a meat cutter. In 1980 he was promoted to "chief journeyman" in the meat department and held the title of "meat manager." In 1980, defendant Gregory Thomas became the store manager at Shop–Rite.[2]

The testimony at trial revealed that during Hoy's employment at Shop–Rite, Angelone subjected her to various forms of abusive treatment, including sexual propositions, vile and filthy language, off-color jokes, physical groping, and the posting of sexually suggestive pictures. Angelone did not dispute that such conduct took place, but contended that it was accepted and welcomed by Hoy. In 1992 appellee took medical leave from her job in order to receive psychiatric treatment. Hoy presented evidence that her condition was caused, at least in part, by the treatment she was subjected to by Angelone. When Hoy returned to work she requested, on February 1, 1992, that Thomas transfer her to another department because of the abusive treatment directed at her by Angelone in the meat department. Thomas contended that this was when he first became aware of Angelone's treatment of Hoy. Hoy was not transferred until October of 1992.

Following deliberation, the jury returned a verdict in favor of Hoy, making the following findings:

1. Defendant Dominick Angelone engaged in conduct constituting sexual harassment toward plaintiff, Louise Hoy.

2. Defendant Dominick Angelone was a supervisory employee at Shop–Rite during the alleged incidents.

3. Defendant Gregory Thomas was aware, prior to February 1, 1992, of sexual harassment conduct toward plaintiff, Louise Hoy, and failed to do anything about it.

2. Defendant Thomas is not a party to this appeal.

4. Plaintiff Louise Hoy has proven by a preponderance of the evidence that Dominick Angelone intentionally inflicted emotional distress upon her.

The jury awarded Hoy $51,000 for her claims under the Pennsylvania Human Relations Act ("PHRA"),[3] $25,000 in damages against Angelone for intentional infliction of emotional distress, $50,000 in punitive damages against Angelone, $25,000 in punitive damages against Thomas and $250,000 in punitive damages against Shop–Rite. During post-verdict proceedings the trial court granted judgment n.o.v. for Angelone and Thomas and ordered the punitive damage award against each to be stricken. Judgment was subsequently entered on the remaining verdicts. This appeal followed.

Appellants first contend that the court erred in not granting Shop–Rite's motion for judgment n.o.v. with regard to Count I, liability under the PHRA, because: (1) Angelone's status as chief journeyman in the meat room does not rise to the level of supervisor of Shop–Rite; and (2) Shop–Rite cannot be liable for Angelone's conduct because it did not know nor had reason to know of the existence of a sexually hostile environment, and it took effective remedial action.[4]

When reviewing the denial of judgment n.o.v. based on the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences. *Ball v. Johns–Manville Corp.*, 425 Pa.Super. 369, 376–77, 625 A.2d 650, 653 (1993). Only when the facts are such that no two reasonable persons could fail to agree that the verdict was improper, will

---

3. 43 P.S. §§ 951–963.

4. With respect to these issues, Hoy contends that they have been waived because appellants have failed to allege the trial court's instruction to the jury regarding the law of sexual harassment was erroneous. We point out that appellant's are not challenging the court's instruction to the jury, but whether the evidence was sufficient to support the verdict. In determining whether there is sufficient evidence, we view the evidence in light of the correct and applicable legal standards, regardless of whether the trial court properly instructed the jury on the relevant points of law. As appellants have not alleged error with respect to the jury instructions as part of this issue, we make no determination as to the propriety of the instruction given.

the court enter judgment n.o.v. *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 33, 485 A.2d 408, 414 (1984). Judgment n.o.v. should not be entered in a case where evidence conflicts regarding a material fact. *Northwest Savings Assoc. v. Distler,* 354 Pa.Super. 187, 189–91, 511 A.2d 824, 825 (1986).

■ In interpreting the PHRA, Pennsylvania courts may look to federal court decisions interpreting Title VII of the Civil Rights Act of 1964, 42 U.C.S.A. § 2000e et seq. *Kryeski v. Schott Glass Technologies,* 426 Pa.Super. 105, 111–12, 626 A.2d 595, 598 (1993); *Allegheny Housing v. Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987). Under federal law, an action for sexual harassment may be brought under two separate theories: "quid pro quo" and "hostile environment." *Gary v. Long,* 59 F.3d 1391, 1395 (D.C.Cir.1995). The present case involves a claim under the hostile environment theory.

■ Hostile environment sexual harassment occurs when unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile or offensive working environment. *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 782 (1st Cir.1990).[5] In order to recover under a hostile environment claim, the following elements must be proven at trial:

1. the employee suffered intentional discrimination because of her sex;

2. the discrimination was pervasive and regular;

3. the discrimination detrimentally affected the plaintiff;

4. the discrimination would detrimentally affect a reasonable person of the same sex in that position; and

**5.** Quid pro quo sexual harassment occurs where submission to unwelcome sexual conduct is made, either implicitly or explicitly, a term or condition of an individual's employment or where an individual's submission to or rejection of such conduct is used as a basis for employment decisions affecting the individual. *Id.* Hoy has not alleged, nor do the facts adduced at trial support, the existence of quid pro quo sexual harassment in this case.

5. the existence of respondeat superior liability.

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1483 (3rd Cir.1990). Shop–Rite does not dispute, and our independent review of the record confirms, that Hoy has established the first four elements of a hostile environment claim. It contends that she has not established respondeat superior liability because (1) Angelone is not a supervisor of Shop–Rite and (2) Shop–Rite did not know or have reason to know of the sexually hostile environment and it took effective remedial action.

In determining whether an employer is liable for a sexually hostile environment, we are guided by agency principles. *Id.* at 1486. Liability will exist where the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.* Additionally, an employer will be held liable for a discriminatorily abusive work environment created by a supervisor, if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship. *Karibian v. Columbia University*, 14 F.3d 773, 780 (2nd Cir.1994). Where a low-level supervisor does not rely on his authority to carry out the harassment, the situation is indistinguishable from a case in which the harassment is perpetrated by the plaintiff's co-worker, and the supervisor will not be deemed an agent of his employer. *Id.* Moreover, an employer will not be held liable for misconduct based upon the apparent authority of its supervisor where it would be unreasonable for the harassed employee to believe that such conduct was the employer's policy. *Bouton v. BMW of North America, Inc.*, 29 F.3d 103, 109 (3rd Cir.1994). Whether the authority to harass has been communicated or repudiated by the employer may be determined objectively from the work environment created or tolerated by the employer. *Id.*

We begin our analysis by reviewing the jury's determination that Angelone was a supervisor of Shop–Rite during the alleged instances of sexual harassment. After careful

review of the record, we conclude that there is insufficient evidence to establish that Angelone was a supervisor and agent of Shop–Rite. Although Angelone was Hoy's immediate supervisor, he did not possess sufficient authority so as to classify him as Shop–Rite's agent. His authority over Hoy and the other employees in the meat room was limited to scheduling their hours and insuring they kept the meat cases full. Moreover, Angelone did not purport to exercise Shop–Rite's corporate authority as an instrument for harassment. Rather, the evidence indicates that Angelone was, at most, a low-level supervisor, more akin to a co-worker of Hoy, and that his misconduct transpired due to his own reasons and was perpetrated by his own means. As such, any liability on the part of Shop–Rite cannot be predicated upon the status of Angelone as "chief journeyman" or "meat manager." *See Bouton, supra* (test for agency should consider whether harasser had the power to hire, fire, promote or discipline plaintiff). *Cf. Swentek v. USAIR, Inc.,* 830 F.2d 552 (4th Cir.1987)(pilot was not flight attendant's supervisor where he did not exercise corporate authority as an instrument of harassment, he possessed very limited authority over attendant, did not have the authority to hire, fire, promote or demote attendants nor determine their work assignments; relationship of pilot and attendant was more akin to bickering co-workers); *Stewart v. Weis Markets, Inc.,* 890 F.Supp. 382 (M.D.Pa.1995)(produce department manager, who was immediate supervisor of plaintiff who brought hostile environment sexual harassment claim, did not possess level of authority sufficient to impute knowledge of his activities to defendant supermarket).

We now turn to Shop–Rite's contention that it did not know, nor did it have reason to know, of the existence of a sexually hostile work environment, and that once it learned of the situation, by virtue of Hoy's February 1, 1992 letter, it took effective remedial action. As noted *supra,* the jury determined that defendant Thomas, the manager of the Shop–Rite store, was aware of sexual harassment conduct toward Hoy prior to February 1, 1992, and failed to take any remedial action. It is undisputed that Thomas was a supervisor of

Shop–Rite during the alleged incidents of sexual harassment which occurred after 1980. Thus, Shop–Rite will be held liable if Thomas knew or should have known of the sexually hostile environment and failed to take effective remedial action.

A plaintiff may establish an employer's knowledge by showing: (1) that she complained to higher management; or (2) that the harassment was so pervasive that the employer will be charged with constructive knowledge. *Faragher v. City of Boca Raton,* 76 F.3d 1155, 1167 (11th Cir.1996); *Spicer v. Commonwealth of Virginia,* 66 F.3d 705, 69 F.E.P. 1255 (4th Cir.1995). Here, it is undisputed that Hoy did not inform Thomas of the sexually hostile work environment until February 1, 1992. The jury, however, found that Thomas was aware of Angelone's conduct toward Hoy prior to this date. After review of the record, we conclude that the harassment perpetrated by Angelone in this case was so pervasive that Thomas and Shop–Rite had constructive knowledge of the sexually hostile work environment to which Hoy was subjected. The testimony at trial established that Hoy was, on numerous occasions over a period of several years, subjected to vile and sexually explicit language, sexual propositions and physical groping from Angelone. In addition, Angelone, on numerous occasions, made sexually explicit or degrading comments about Hoy to others in her presence. He also gave her sexually explicit or suggestive notes and cards and hung sexually explicit or suggestive pictures in the meat room. Several of Angelone's and Hoy's co-workers were aware of the continued and ongoing nature of this sexual abuse and so testified at trial. Additionally, Hoy testified that she had complained on at least one occasion to Shop–Rite's assistant manager regarding Angelone's conduct, but the abuse continued. Finally, store manager Thomas was aware that sexually explicit pictures were hanging in the meat room for a number of years, but failed to take action with regard to removing them or inquiring if any employees found them offensive. In view of these circumstances, we find there was sufficient evidence to impute knowledge of the sexually hostile work

environment to Shop–Rite and that the trial court properly denied the request for judgment n.o.v. *Cf. Stewart, supra* (harassment of plaintiff was sufficiently frequent and done with such disregard for who was in a position to overhear or observe it that store manager knew or must have known that it was occurring).[6]

In the next issue, Angelone contends that the trial court erred in not granting his motion for judgment n.o.v. as to Count II, intentional infliction of emotional distress, because: (1) such a claim is barred by either the exclusivity provision of the Workers' Compensation Act[7] or the exclusivity provision of the PHRA; and (2) the evidence was insufficient to support a finding of intentional infliction of emotional distress.[8]

With respect to the first of these arguments, this Court has already determined that the PHRA does not bar independent legal action for intentional infliction of emotional distress. *See Schweitzer v. Rockwell International,* 402 Pa.Super. 34, 586 A.2d 383 (1990). Additionally, this Court has also determined that the Workers' Compensation Act will not bar an action for intentional infliction of emotional distress where the injury to the employee arose from harassment which was personal in nature and not part of the proper employer-employee relationship. *Id.* As we have already determined that the harassment perpetrated by Angelone was personal in nature and not directed at Hoy due to her employment, her emotional distress claim is not barred by the Workers' Compensation Act.

We now turn to the second part of Angelone's argument, that the evidence was insufficient to support the

6. We further note that no remedial action was taken by Shop–Rite or Thomas prior to February 1, 1992. As already noted, Shop–Rite contended that it did not learn of Angelone's misconduct until this date. As we have already determined that knowledge of this conduct is imputed to Thomas and Shop–Rite prior to this date, we need not inquire further into the claim of prompt remedial action.

7. 77 P.S. § 481.

8. Hoy contends that this issue is waived because it was not raised before the trial court. Our review indicates, however, that this issue was raised in post-trial motions, and is therefore properly preserved.

finding that he intentionally inflicted emotional distress on Hoy. To prove a claim of intentional infliction of emotional distress, the following elements must be established:

(1) the conduct must be extreme and outrageous;

(2) it must be intentional or reckless;

(3) it must cause emotional distress;

(4) that distress must be severe.

*Hooten v. Penna. College of Optometry,* 601 F.Supp. 1151, 1155 (E.D.Pa.1984); Section 46 of the Restatement (Second) of Torts.

Angelone contends that his conduct was not sufficiently outrageous to impose liability for this tort. While our courts recognize a cause of action for intentional infliction of emotional distress, we have allowed recovery in only very egregious cases. *See Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118, (1970)(concealing child's death and withholding body from parents). *But see D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981)(insurance company's alleged bad faith failure to honor a claim does not rise to level of extreme or outrageous conduct); *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963) (not outrageous to follow an accident victim, conducting surveillance to determine the extent of the injury); *Mullen v. Suchko,* 279 Pa.Super. 499, 421 A.2d 310 (1980)(broken promise of financial support from lover not extreme and outrageous).

Although our courts appear not to have addressed this issue in the context of ongoing sexual harassment in a work environment, federal courts have applied Pennsylvania law in this situation. In *Andrews, supra,* a panel of the Third Circuit opined:

As this court observed in *Cox,* "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."

\*    \*    \*    \*    \*    \*

Also, as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress. As we noted in *Cox*, 861 F.2d at 395–96, "the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *See, e.g., Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 311 (M.D.Pa.1988). The extra factor that is generally required is retaliation for turning down sexual propositions.

*Andrews, supra* (citing *Cox v. Keystone Carbon*, 861 F.2d 390 (3rd Cir.1988)).

After reviewing the record in this case, we conclude that the trial court erred in denying Angelone's motion for judgment n.o.v. on this count. Although the record fully establishes and supports the existence of a sexually hostile work environment, such evidence alone does not establish the requisite outrageousness to recover under a claim of intentional infliction of emotional distress. The record is devoid of any evidence of retaliatory action against Hoy. As such, the evidence was insufficient to allow Hoy to recover on this claim. We, therefore, vacate the judgment against Angelone and reverse the verdict against him on this count.

Shop–Rite next contends the evidence was insufficient to support the award of punitive damages and that judgment should be entered in its favor or, in the alternative, a remittitur of the award or a new trial should be granted. Two arguments are advanced by Shop–Rite: (1) punitive damages are not recoverable under the PHRA; and (2) it did not act outrageously and the punitive damage award should be set aside or substantially remitted.

Beginning with the first of these two claims, we note that our courts have not addressed whether punitive damages are recoverable under the PHRA. Several federal courts, however, have addressed this issue. Although these courts were initially split over whether such recovery was proper, the

recent trend has been to allow punitive damages to be recovered under the Act. This conclusion appears to be based, at least in part, upon our supreme court's decision in *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 387 A.2d 70 (1978), where the court allowed recovery of damages for humiliation and mental anguish based upon the language of the PHRA which gave the courts authority to order "any other legal or equitable relief as the court deems appropriate." *See Galeone v. American Packaging Corp.,* 764 F.Supp. 349 (E.D.Pa.1991). We note that *Zamantakis* was a plurality opinion and is not binding precedent. Moreover, damages for humiliation and mental anguish are compensatory in nature, and are thus different in purpose and kind from punitive damages, the express purpose of which is to punish. We are unpersuaded that such damages are recoverable under the PHRA and are reluctant to allow such recovery in the absence of more definitive guidance by our high court. Whether the PHRA contemplates recovery for punitive damages is a matter which is properly determined by our supreme court. We, therefore, vacate the judgment for punitive damages and reverse the verdict against Shop–Rite on this count.

■ Appellants also point to three alleged errors concerning the court's instructions to the jury and/or the verdict slip which they maintain entitle them to a new trial. When reviewing a trial court's refusal to grant a new trial, we determine whether the court committed an error of law or abused its discretion in a manner that controlled the outcome of the case. *Ball, supra.* A review of the record indicates that the last two of these three issues were not properly preserved, as appellants failed to make timely specific objections at trial, and they are, therefore, waived. *See Harding v. Consolidated Rail Corp.,* 423 Pa.Super. 208, 620 A.2d 1185 (1993)(only those issues properly raised in the trial court may be reviewed on appeal). In any event, all three issues are meritless.

■ In the first of these issues, appellants contend that it was error for the court, in charging the jury, to indicate that

respondeat superior liability was an essential element in a claim for hostile environment sexual harassment, but then fail to explain this term to the jury.

■■■■■■ A trial court's charge to the jury must be read in its entirety in order to determine whether an error has been committed. *Mickey v. Ayers,* 336 Pa.Super. 512, 515, 485 A.2d 1199, 1201 (1984). Even if the trial court committed error, we will reverse only if the error prejudiced the complaining party. *Id.*

The duty of a trial judge in charging a jury is two-fold: (1) he must make an accurate statement in plain language of the applicable principles of law, and (2) he must accurately, impartially, without prejudice to any litigant and without usurping the jury's function, assist the jury in applying these principles to the facts of the case before them.

*Kimmel v. Yellow Cab Company,* 414 Pa. 559, 563, 201 A.2d 417, 419 (1964).

Here, the court did not specifically define the term respondeat superior during its charge. It did, however, instruct the jury that an employer is responsible for its acts and those of its agents and supervisory employees. Furthermore, the court adequately and accurately explained to the jury the circumstances under which Shop–Rite could be held liable in this case. As such, we discern no prejudice to appellants.

■■■■■■ Appellants next contend that a new trial must be granted in light of the jury not being required to answer certain questions on the verdict slip. These questions concerned Shop–Rite's knowledge of Angelone's actions, and whether any sexual harassment conduct continued after February 1, 1992. It was unnecessary for the jury to answer these questions in view of the fact that it found that the evidence supported that Thomas was or should have been aware of the sexually hostile work environment, and that Thomas was a supervisory employee of Shop–Rite. These findings established Shop–Rite's liability and rendered superfluous inquiry into Shop–Rite's direct knowledge of Angelone's

actions and whether the sexual harassment continued after February 1, 1992.

The final issue raised by appellants is that the court erred in failing to charge the jury with respect to Hoy's willing participation, in view of evidence presented by the defense that she welcomed Angelone's behavior. A review of the court's charge reveals that it did instruct the jury that the alleged sexual conduct must have been unwelcome. As such, this final issue is meritless.

We have thoroughly reviewed each of the issues raised by appellants. Having concluded that the sexual harassment perpetrated against Hoy by Angelone was so pervasive that Thomas and Shop–Rite had constructive knowledge, the judgment entered against Shop–Rite under the PHRA is affirmed. Because we find no support in Pennsylvania law for an award of punitive damages under the PHRA, the judgment entered against Shop–Rite for punitive damages is vacated and reversed. Finally, having concluded that there was insufficient evidence of outrageousness, the judgment entered against Angelone for intentional infliction of emotional distress is vacated and reversed.

Judgment against Shop–Rite affirmed in part, reversed in part. Judgment against Angelone reversed.

McEWEN, President Judge, files a Concurring and Dissenting Statement.

McEWEN, President Judge, concurring and dissenting.

The Opinion of my venerable colleagues of the majority reveals so precise an analysis and perceptive an expression of rationale that I hasten to join in that Opinion in all respects with one exception, namely, the conclusion that punitive damages are not recoverable under the PHRA.

The purposes of the Act as well as the language of the statute compel me to the conclusion, shared by our colleagues of the federal judiciary, that the legislature intended to allow the award of punitive damages in those instances when the conduct of the employer warranted such an award. See, e.g.:

*Rush v. Scott Specialty Gases, Inc.*, 914 F.Supp. 104, 109–10 (E.D.Pa.1996); *Griffiths v. Cigna Corp.*, 857 F.Supp. 399, 409–10 (E.D.Pa.1994); *aff'd.*, 60 F.3d 814 (3rd Cir.1995); *Taylor v. Central Pennsylvania Drug and Alcohol Services Corp.*, 890 F.Supp. 360, 373 (M.D.Pa.1995); *Jackson and Coker Inc. v. Lynam*, 840 F.Supp. 1040, 1050–51 (E.D.Pa.1993), *aff'd.*, 31 F.3d 1172 (3rd Cir.1994); *Galeone v. American Packaging Corp.*, 764 F.Supp. 349, 351–52 (E.D.Pa.1991). *See also*: *Clark v. Commonwealth of Pennsylvania*, 885 F.Supp. 694, 715 (E.D.Pa.1995).

Thus it is that I dissent from that portion of the majority opinion which finds that punitive damages are not recoverable under the PHRA.