J-S94013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DR. LAXMI CHALLA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PINNACLE HEALTH HOSPITALS INC., PINNACLE HEALTH AT HARRISBURG HOSPITAL, PINNACLE HEALTH SYSTEM | |
| Appellees | No. 370 MDA 2016 |

Appeal from the Judgment Entered February 25, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 06-2765

*****

| | |
|---|---|
| DR. LAXMI CHALLA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PINNACLE HEALTH HOSPITALS D/B/A PINNACLE HEALTH AT HARRISBURG HOSPITAL AND PINNACLE HEALTH SYSTEM | |
| Appellants | No. 458 MDA 2016 |

Appeal from the Judgment Entered February 25, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2006 CV 2765

J-S94013-16

BEFORE:  LAZARUS, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 13, 2017**

Doctor Laxmi Challa (Challa) appeals and Pinnacle Health Hospitals, d/b/a Pinnacle Health at Harrisburg Hospital and Pinnacle Health System (collectively, Pinnacle Health), cross-appeals from the judgment entered on the trial court's order granting a non-suit in favor of Pinnacle Health and denying Pinnacle Health's post-verdict motion for fees and costs of suit. After careful review, we affirm.

Challa, a licensed physician, graduated from medical school in India and immigrated to the United States in 2000.  In October 2002, Challa applied for a first-year position in Pinnacle Health's Internal Medicine Residency Program and was "matched" with that program in March 2003. On June 16, 2003, Challa relocated from San Jose, California, to Harrisburg, Pennsylvania, in anticipation of beginning her residency.  On June 29, 2003, during her residency orientation week, Challa informed Pinnacle Health's Internal Medicine Department's program coordinator, Janene Beck, that she was thirty weeks pregnant and due to give birth in September 2003.

Challa began her residency with Pinnacle Health on July 1, 2003. In mid-to late July 2003, Challa reported to her program coordinators that she was having "on and off" dizziness which affected her ability to finish patient

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

notes before rounds.  On August 26, 2003, Challa met with Pinnacle Health's Internal Medicine Program Director, Dr. Nirmal Joshi, who expressed his concerns regarding her performance in the program.  Specifically, Dr. Joshi told Challa that he was getting consistent negative feedback from her residency supervisors regarding her bedside performance with patients.  On August 27, 2003, Challa suffered a premature membrane rupture and was admitted to Harrisburg Hospital; she gave birth, via C-section, on August 28, 2003.  Challa took four weeks' leave after giving birth.

In October 2003, upon her return to the program following maternity leave, Challa received a positive performance review for her work in an emergency room rotation.  On November 17, 2003, Challa met again with Dr. Joshi who told her that he was still receiving reports of her poor performance from supervisors.  On December 1, 2003, Challa was placed on one-month probation after Dr. Joshi determined that she was not meeting the educational requirements for the residency program.  On December 16, 2003, Dr. Joshi met with Challa to give her a two-week evaluation of her probation; during the meeting, Challa indicated that she would work during the Christmas break to demonstrate that she could improve her performance.  On January 6, 2004, Dr. Joshi met with Challa and informed her that because her program performance continued to be unsatisfactory she would have to leave the residency program.  Challa agreed to resign from the program.  The resignation letter, penned by Challa, states:

Due to unforeseen personal reasons I would like to resign by the end of February 2004 from PGY Internal Medicine Residency Program at Pinnacle Health Hospitals. Thank you for your cooperation in this matter. Yours sincerely, Lazmi D. Challa

Resignation Letter, 1/8/04.

On June 23, 2006, Challa filed a discrimination complaint against Pinnacle Health under the Pennsylvania Human Relations Act (PHRA).[1] In her complaint, Challa alleged that she was unlawfully discriminated against on the basis of her pregnancy,[2] gender, and disability. On January 12, 2012, Pinnacle Health filed a motion for summary judgment, which the court denied.

A non-jury trial was held on October 7, 2015, before the Honorable Bruce F. Bratton. At trial, Pinnacle Health conceded that Challa suffered an adverse employment action; however, it argued Challa was terminated for a legitimate, non-discriminatory reason. At the close of Challa's case, Pinnacle Health moved for a non-suit.[3] N.T. Non-Jury Trial, 10/7/15, at 192. On

_____

[1] 43 P.S. §§ 951-963.

[2] The PHRA itself prohibits pregnancy discrimination and the PHRA is read *in pari materia* with Title VII's Pregnancy Discrimination Act, 42 U.S.C. § 2000e, et seq.

[3] Although Pinnacle Health and the court refer to the motion as a motion for a directed verdict, it is properly termed a motion for non-suit. **Compare Rachlin v. Edmison**, 813 A.2d 862 (Pa. Super. 2002) (en banc) (entry of compulsory nonsuit is proper if trial on the case has begun and the plaintiff has presented evidence) **with** Pa.R.C.P. 226 (trial court may grant motion for directed verdict at close of *all* evidence). Therefore, the appeal is taken from the court's entry of a non-suit, not a directed verdict.

October 8, 2015, in open court, the court granted Pinnacle Health's motion for non-suit.  N.T. Proceedings, 10/8/15, at 203-205.  On October 16, 2015, Challa filed post-trial motions.   Ten days later, on October 26, 2016, Pinnacle Health filed post-trial motions.   After more than 120 days had elapsed from the filing of her post-trial motions, Challa filed a praecipe to enter judgment, pursuant to Pa.R.C.P. 227.4(1)(b), on February 25, 2016. On that same day, the court entered final judgment.

On March 2, 2016, Challa filed a timely notice of appeal from the final judgment.[4]   On March 8, 2015, the trial court ordered Challa to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 17, 2016, Pinnacle Health filed a timely notice of appeal.[5]   On March 25, 2016, Challa filed her Rule 1925(b) statement.  On March 31, 2016, the trial court ordered Pinnacle Health to file a Rule 1925(b) statement; Pinnacle Health complied and filed its statement on April 20, 2016.

---

[4] *See Conte v. Hahnemann Univ. Hosp.*, 707 A.2d 230 (Pa. Super. 1997) (once requisite 120-day period runs after filing post-trial motions and party opts to praecipe for entry of judgment, judgment becomes final, and immediately appealable, when it is entered on docket); *see also* Pa.R.C.P. 227.4(1)(b).

[5] On May 23, 2016, by order of Court, we *sua sponte* consolidated the two appeals at 307 MDA 2016 (Challa appeal) and 458 MDA 2016 (Pinnacle Health appeal).  *See* Pa.R.A.P. 513 (when more than one appeal is from same order, appellate court may order them to be consolidated).

On appeal, Dr. Challa raises the following issues for our review:

(1)    Whether the court below erred in granting a directed verdict against [Challa].[6]

(2)    Whether the court below erred in granting a nonsuit against Plaintiff-Appellant.

(3)    Whether the court below erred in finding that [Challa] had not established a prima facie case for discrimination under the PHRA.

(4)    Whether the court below erred in finding that [Pinnacle Health] established a legitimate non-discriminatory reason for any adverse employment actions in this case.

(5)    Whether the court below erred in finding that [Challa] had not put forward evidence of pretext for any adverse employment actions in this case.

(6)    Whether, to the extent it did not [do] so, the court below erred in failing to give proper weight to the admissible hearsay admissions by [Pinnacle Health's] agents.

(7)    Whether the court below erred in allowing [Pinnacle Health] to argue that it would have terminated [Challa] regardless of whether she resigned when it took a contradictory position throughout the litigation with prior counsel.

On cross-appeal, Pinnacle Health raises the following issue for our consideration:  Did the trial court err in failing to award attorneys' fees and costs to Pinnacle Health where Challa failed to produce any evidence at trial to support her claim?

---

[6] As previously noted, **see supra** n.3, the trial court entered a non-suit at the close of Challa's case, not a directed verdict, in favor of Pinnacle Health. Therefore, the appeal is taken from the court's entry of a non-suit, not a directed verdict, making the first issue moot.

**Challa's Appeal**

Challa contends that the trial court improperly granted a non-suit in Pinnacle Health's favor where, in pleadings, it denied that it forced Challa to resign and then, at trial, admitted that it terminated her. Challa contends that by permitting Pinnacle Health to take these different positions she was prejudiced and, in the end, Pinnacle Health failed to advance a non-discriminatory reason for the adverse employment action.

A compulsory non-suit can only be granted in cases where it is clear that a cause of action has not been established. The plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence. ***Smith v. King's Grant Condominium***, 614 A.2d 261, 263 (Pa. Super. 1992) (citation omitted). Any conflict in the evidence must be resolved in favor of the plaintiff. ***Id.***[7]

Under the PHRA, the plaintiff has the burden of establishing a prima facie case of discrimination. ***General Electric Corp. v. Pennsylvania Human Relations Commission***, 365 A.2d 649, 655-56 (Pa. 1976), adopting the holding of ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792

---

[7] We note that prior case law only permitted an appeal from a final order denying an appellant's motion to remove a non-suit. ***See Billig v. Skvarla***, 853 A.2d 1042, 1048 (Pa. Super. 2004) ("in a case where non-suit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit."). Here, Challa filed a post-trial motion alleging that the trial court erred in granting a non-suit against her. Because a motion for post-trial relief replaces a motion to remove a non-suit, she has preserved this allegation on appeal. ***See*** Pa.R.C.P. 227.1(a) (Note).

(1973). A prima facie case is established by showing that the plaintiff is a member of a protected class, has suffered an adverse employment action, and, others not in the protected class have been treated differently. ***Kryeski v. Schott Glass Technologies, Inc.***, 626 A.2d 595, 597-98 (Pa. Super. 1993).

Once the plaintiff has established a prima facie case, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the discharge. ***Winn v. Trans World Airlines, Inc.***, 484 A.2d 392, 402 (Pa. 1984); ***Jenks v. Avco Corp.***, 490 A.2d 912, 915 (Pa. Super. 1985). The employer's burden is one of production, not persuasion, and thus involves no credibility assessment. ***Kroptavich v. Pa. Power & Light Co.***, 795 A.2d 1048, 1055 (Pa. Super. 2002) (citation omitted). If the employer articulates a legitimate business explanation, then the presumption of discriminatory intent created by the employee's prima facie case is rebutted and the presumption simply drops out of the picture. ***Id.*** If a defendant meets this burden, then a plaintiff has the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but, rather, a pretext for discrimination. ***Bailey v. Storlazzi***, 729 A.2d 1206, 1212 (Pa. Super. 1999). Thus, the ultimate burden of proving intentional discrimination returns to the plaintiff after the employer offers its legitimate, non-discriminatory reasons for the employment action. ***Id.***

Pinnacle Health does not contest that Challa meets the first two prongs of a prima facie case. In fact, it conceded at trial that Challa suffered an adverse employment action when she was terminated from Pinnacle Health. Pinnacle Health, however, disagrees with Challa's claim that it treated her differently than other non-pregnant residents in its program. Other than her self-serving testimony that a chief resident asked for volunteers to take her on-call shift and rotations prior to her termination, Challa has produced no evidence to suggest that she was treated less favorably than her non-pregnant resident counterparts due to her pregnancy. **Kryeski**, **supra**. Therefore, she failed to establish a prima facie case of discrimination.

However, even if the court found that Challa established a prima facie case of discrimination, Pinnacle Health clearly articulated a legitimate non-discriminatory motive for its actions.

Based on the evidence presented at trial, the court concluded that Challa was terminated because she was unable to communicate effectively with patients. Specifically, Dr. Joshi testified that he had a one-on-one meeting with Challa in August 2003 to address consistent concerns raised by several supervisors regarding her negative bedside performance. N.T. Non-Jury Trial, 10/7/15, at 124. Doctor Joshi made a notation in Challa's file to reflect his concerns with her having difficulty progressing in her residency training. **Id.** at 126-28. Prior to placing Challa on probation, Dr. Joshi again noted that "when . . . evaluated against her peers at that time in training and with other peers, she was clearly not making it, so . . . to that extent

she was not competent." *Id.* at 134. Specifically, he testified that Challa was not meeting the educational requirements for the residency program. *Id.* This evidence proves that Pinnacle Health had a legitimate, non-discriminatory reason for terminating Challa. Therefore, the burden then shifted to Challa to prove, by a preponderance of the evidence, that Pinnacle Health's alleged legitimate reasons were pretexual. *Bailey*, *supra*.

We first note that whether Challa voluntarily resigned or was forced to resign (terminated) is of no moment in the court's ultimate judgment in favor of Pinnacle Health where Challa failed to produce any evidence of pretext to rebut Pinnacle Health's legitimate, non-discriminatory reason to terminate her. There was ample documentary evidence supporting Dr. Joshi's testimony that Challa consistently failed to meet the standards required of Pinnacle Health's residency program.

Challa's testimony that a program coordinator questioned how she was going to manage her pregnancy and residency and told her "it was not time to be pregnant," simply does not establish, by a preponderance of the evidence, that her pregnancy was a motivating or determinative factor in Pinnacle Health's employment decision. *Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1061 (Pa. Super. 2002) (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 644-45 (3d Cir. 1998)). The record supports the finding that Challa was warned several times prior to her probationary period that supervisors had a "regular pattern of concerns related to her performance at the bedside," N.T. Non-Jury Trial, 10/7/15, at 124, and that

she simply failed to meet the educational requirement of the residency program. Moreover, the fact that Dr. Joshi gave Challa a favorable letter of recommendation following her resignation also does not establish pretext where Dr. Joshi testified that it is common practice to write such letters so that residents are given an opportunity to "start somewhere else in a different discipline. . . [and] allow them to have a second chance." *Id.* at 142, 146.

In sum, the evidence bears out the fact that the trial court, as fact finder, could determine that Pinnacle Health's alleged legitimate reason, Challa's poor job performance, was not motivated by animus. *Kroptavich*, *supra* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994)) (to prove pretext, plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence'" and infer that proffered non-discriminatory reason "did not actually motivate" employer's action). Therefore, we find no merit to Challa's claim that the court improperly entered non-suit in Pinnacle Health's favor where it is clear that she failed to establish a cause of action for discrimination under the PHRA.

Challa also contends that the court failed to give proper weight to admissible hearsay statements. Specifically, she claims that her testimony about statements made by the hospital's supervising staff were admissible under Pa.R.E. 803(25)(C) or (D), as opposing parties' statements.

Moreover, she contends that the comments made by the staff established pretext and support her discrimination case.

Pursuant to Rule 803:

(25) An Opposing Party's Statement. The statement is offered against an opposing party and:

(A) was made by the party in an individual or representative capacity;

(B) is one the party manifested that it adopted or believed to be true;

**(C) was made by a person whom the party authorized to make a statement on the subject;**

**(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed**; or

(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Pa.R.E. 803(25)(C), (D) (emphasis added).

Challa cites to no case law to support her empty claim that the court erred "to the extent [that it] failed to give the proper weight to the admissible hearsay admissions." Appellant's Brief, at 28. Instantly, the trial court concluded that any reference to Dr. Dida, Challa's attending physician, was only to be considered "to the extent it is offered only that these statements occurred, not that the content was in any way . . . being offered for the truth of the matter within these conversations." N.T. Non-Jury Trial, 10/7/15, at 29. The fact remains that while Dr. Dida supervised Challa's residency, she did not have the power to make ultimate decisions regarding the retention or termination of residents from the program. Thus, we see no

error in the court's limited consideration of Challa's testimony regarding Dr. Didia.

**Pinnacle Health's Cross-Appeal**

On cross-appeal, Pinnacle Health asserts that the trial court improperly denied its post-trial motion seeking attorneys' fees and costs under the PHRA.

The trial court concluded that while Challa did not produce evidence to support a prima facie claim of discrimination, her conduct did not rise to the level of bad faith to support an award of attorneys' fees and costs under section 962(c.3) of the PHRA.  **See** 43 Pa.C.S. § 962(c.3) ("court may award attorney fees and costs to the prevailing defendant if the defendant proves that the complaint was brought in bad faith.").  We agree.  **See Hoy v. Angelone**, 691 A.2d 485 (Pa. Super. 1997) (where nothing suggested that defense was not undertaken and conducted in good faith, trial court's denial of counsel fees and costs under section 962 of PHRA was not manifestly unreasonable or clearly erroneous).

Moreover, Pinnacle Health was not entitled to the counsel fees under 42 Pa.C.S. § 2503, which states:

§ 2503. Right of participants to receive counsel fees.

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

*     *     *

- 13 -

(9)  Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

(10)  Any other participant in such circumstances as may be specified by statute heretofore or hereafter enacted.

42 Pa.C.S. § 2503(9), (10).  As we previously concluded, Challa's actions in bringing her discrimination lawsuit against Pinnacle Health did not rise to the level of bad faith, nor were they arbitrary or vexatious.  ***See Thunberg v. Strause***, 692 A.2d 295 (Pa. 1996) (where there is no basis in law or fact for commencement of action, action is arbitrary).  Therefore, the trial court did not abuse its discretion in denying Pinnacle Health's post-verdict motion.[8]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2017

---

[8] Although Pinnacle Health did not file its post-verdict motion until October 26, 2015, more than 10 days after the trial court entered its directed verdict/non-suit, pursuant to Pa.R.C.P. 227.1(c) "[i]f a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion."  Because Pinnacle Health's post-verdict motion was filed within 10 days of the date that Challa filed her post-trial motion, it was timely filed.