Dr. Abeba FEKADE,

v.

LINCOLN UNIVERSITY, Dr. Delroy Louden, and Dr. Penelope J. Kinsey.

No. CIV. A. 99–6224.

United States District Court, E.D. Pennsylvania.

April 3, 2001.

Adrian J. Moody, Moody and Anderson, P.C., Philadelphia, PA, Abeba Fekade, Dr., Columbia, MD, for Plaintiff.

Jeffrey S. Toaltoan, Black & Adams, Philadelphjia, PA, for Defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Presently before the Court is a Motion for Summary Judgment filed by the Defendants, Lincoln University ("the University"), Dr. Delroy Louden ("Louden") and Dr. Penelope Kinsey ("Kinsey") (collectively referred to as "the Defendants"). The Plaintiff, Dr. Abeba Fekade, filed suit in this Court alleging national origin discrimination and retaliation. The Defendants now seek summary judgment on her claims. For the following reasons, the Defendants' Motion for Summary Judgment is granted.

## I. BACKGROUND

Accepting as true the evidence of the nonmoving party, and all inferences that can be drawn therefrom, the facts of the case are as follows. Fekade is an African woman of Ethiopian origin. She has a Ph.D. in Neuropsychology. After Fekade applied for a teaching position with the University, Kinsey recommended hiring her. The University offered her a non-tenured position as an Assistant Professor of Psychology for the academic year 1995–1996. Pursuant to a Collective Bargaining Agreement ("CBA") in place between the University and the University's Chapter of the American Association of University Professors, Fekade's contract was renewa-

ble on an annual basis at the sole discretion of the University. Fekade's contract was renewed each year until late 1998 or early 1999, when the University declined to renew it for the 2000–2001 academic year.

## A. *Kinsey's Alleged Discriminatory Treatment*

Kinsey, an African–American woman, was the Chairperson of the University's Psychology Department when Fekade began working there. Kinsey recommended hiring her. Pursuant to the University's policies, Kinsey negotiated Fekade's starting salary, which was subject to the approval of the University's President. Fekade alleges that Kinsey negotiated an abnormally low starting salary for her because she is of Ethiopian origin; although Fekade had a specialized psychology degree, her starting salary of $34,500 per year was approximately $3,000 lower than that of Dr. Lennell Dade ("Dade"), a contemporary of hers who did not have a specialized degree.[1] Dade, an African–American, is not of Ethiopian origin. Dade had, however, left a tenure track position at another school before joining the University. Fekade, who had never taught full-time before, had not. Fekade also alleges that Kinsey broke an oral promise to compensate Fekade for her low salary by giving her additional research funding; at the beginning of the fall semester, Dade received the research grant.

Fekade also claims that Kinsey subjected her to hostile treatment because of her national origin. Specifically, Fekade claims that Kinsey: (1) told her not to speak during departmental staff meetings; (2) often referred to her as a "foreigner"; and (3) wrote an unfairly negative evaluation of her performance. Although Kinsey never attended one of Fekade's classes, her evaluation of Fekade does state that "I observed that she experienced serious difficulties in her classes." It also stated that "I do not feel that [Fekade] exhibited the kinds of teaching skills needed to work with our students. It is my opinion that she would be able to work more effectively in an environment in which the student body was better prepared both academically and motivationally."[2] Kinsey wrote this evaluation in April of 1998, three years after the 1995–1996 academic year it referred to. Fekade also claims that Kinsey once admitted in a 1995 staff meeting that she did not like hiring foreigners. Because this statement predates Fekade's hiring, Fekade relies on the assertion of a fellow professor. Fekade has been unable, however, to provide documentary evidence of this statement.[3]

## B. *Louden's Alleged Discriminatory Conduct*

In 1997, Kinsey recommended that Louden, an African man of Jamaican origin, replace her as the Psychology Department's Chairperson. Fekade claims that Louden subjected her to hostile treatment,

---

1. Although lower than Dade's, Fekade's starting salary was $5,500 greater than the minimum established by the Collective Bargaining Agreement for a professor of her level.

2. Fekade believes that this evaluation demonstrates Kinsey's discriminatory tendencies because it refers to the University's students as "our students." Fekade claims that Kinsey would often refer to the University's African–American students as "our students" in an

attempt to differentiate them from "foreigners" like Fekade. *See* Plf.'s Resp. at 3 n. 1.

3. Fekade believes that a secretary took the minutes of this staff meeting, which the Defendants have failed to produce. Kinsey admits that she made a statement once regarding affirmative action plans in hiring at the University, but denies ever stating that she preferred not hiring foreigners.

including: (1) suggesting that "he would give her a run for her money"; (2) telling her that, "if he were younger, he would take her away"; (3) complimenting her on her appearance; (4) inviting her to his apartment for a drink; (5) hugging Fekade inappropriately; (6) telling her she "should learn to submit" and that "he would make her life difficult" if she didn't; (7) moving her office next to his; (8) writing an unnecessarily negative performance evaluation; and (9) explaining his aggressive behavior by saying that Fekade wasn't "nice to him." [4]

## C. The Decision Not to Renew Fekade's Contract

In the summer of 1998, Fekade submitted a request that she be allowed to teach classes only twice a week, Tuesdays and Thursdays. Like other non-tenured faculty, she had been teaching on Mondays, Wednesdays and Fridays. Fekade submitted her request only one month before classes would begin, after students had already made their course selections. Fekade initially claimed that she needed to change her schedule because of her long commute; living in Columbia, Maryland, she commuted for nearly four hours each work day. The University denied her request.

Fekade then suggested that medical reasons justified changing her schedule. Fekade produced two doctor's notes, both of which suggested that the University limit her work week from three to two days. Neither recommendation, however, indicated the precise nature of her alleged illness. The University again rejected her

request, this time citing its CBA, which required professors to demonstrate the existence of a "bona fide illness" or other health reason before changing her schedule.[5] Fekade finally offered to teach her classes on Tuesdays, Wednesdays and Thursdays, but the University denied this offer as well.

Classes began that semester on August 26, 1998. Fekade neither ordered textbooks for her students nor reported to teach her classes. After several weeks, the University recommended that she take an immediate leave of absence. Fekade refused, but nonetheless failed to attend any classes in August and September. On September 25, 1998, Dr. Richard C. Winchester ("Winchester"), Vice President for Academic Affairs, sent a letter to Fekade notifying her that she was being placed on unpaid leave.

On September 29, 1998, Louden recommended not renewing Fekade's contract. An internal peer review board concurred with that recommendation. On February 16, Winchester agreed as well. Fekade then filed her EEOC claim on February 22, 1999. On February 26, 1999, James A. Donaldson ("Donaldson"), Interim President of the University, decided to approve the recommendation. Fekade appealed that decision on March 5, 1999. The University's Judicial Committee upheld the decision on June 9, 1999. Fekade then filed suit on December 7, 1999. Counts I, II, IV and VI of her Complaint allege various forms of national origin discrimination, Count III alleges retaliation and Count V alleges conspiracy to deprive her

---

4. Fekade has not alleged that Louden discriminated against her based on her sex. Nor has she alleged that he discriminated against her based on her national origin. The only claim against Louden is contained in Count V of Fekade's Complaint, which alleges that Louden, Kinsey and the University conspired to deprive her of her civil rights.

5. Fekade has not alleged disability discrimination or any other cause of action that would be implicated by a refusal to accommodate a medical condition that would limit her ability to work.

of her civil rights. On February 2, 2001, the Defendants filed the instant Motion for Summary Judgment, which the Court will now consider.[6]

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant fails to meet this burden under Rule 56(c), its motion must be denied.

If the movant adequately supports its motion, however, the burden shifts to the nonmoving party to defend the motion. To satisfy this burden, the nonmovant must go beyond the mere pleadings by presenting evidence through affidavits, depositions or admissions on file to show that a genuine issue of fact for trial does exist. *Id.* at 324; Fed.R.Civ.P. 56(e). An issue is considered genuine when, in light of the nonmovant's burden of proof at trial, the nonmovant produces evidence such that a reasonable jury could return a verdict against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding whether a genuine issue of fact exists, the court is to believe the evidence of the nonmovant, and must draw all reasonable inferences in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. 2505. Moreover, a court must not consider the credibility or weight of the evidence presented, even if the quantity of the moving party's evidence far outweighs that of the nonmovant. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir.1992).

If the nonmoving party meets this burden, the motion must be denied. If the nonmoving party fails to satisfy its burden, however, the court must enter summary judgment against it on any issue on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

■■■ Although Fekade failed to file a timely response to the instant Motion for Summary Judgment, the Court cannot grant the motion as uncontested. First, the courts cannot grant motions for summary judgment merely because they are unopposed, even if no response is ever filed. *See* E.D. Pa. R. Civ. P. 7.1(c). Instead, the Court is required to conduct its own examination of whether granting summary judgment is appropriate. Fed. R.Civ.P. 56(e) ("If the [nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against the [nonmovant]."). Second, courts should reach the merits of a motion despite untimely filing whenever doing so will not result in prejudice to the other party. As considering evidence raised in Fekade's Response will not alter the Court's disposition of the Defendants' Motion for Summary Judgment, the Court will do so despite its untimeliness.

---

6. The Court notes that Fekade's Response was untimely. A formal response was due by March 9, 2001. On March 16, Fekade filed a Motion for Enlargement of Time to Respond. On March 21, the Court denied her request. Nonetheless, Fekade filed her Response on March 22. On March 30, the Defendants filed an Opposition to the Response.

## III. DISCUSSION

### A. Counts IV and V. of Fekade's Complaint

██ Fekade's untimely Response concedes that Counts IV and V of her Complaint should be dismissed. Count IV alleges a violation of 42 U.S.C. § 1981. That statute provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. Fekade concedes that this statute was not drafted in terms of national origin, and thus her claim of national origin discrimination cannot be founded on a violation of this statute. *See* Plf.'s Resp. at 13; *see also, e.g., Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172 (3d Cir.1991). Count V of Fekade's Complaint alleges the existence of a conspiracy between the University, Louden and Kinsey, in violation of 42 U.S.C. § 1985(3). Fekade similarly concedes that the University cannot conspire with itself and its agents acting in the scope of their employment. *See* Plf.'s Resp. at 13; *see also Bougher v. University of Pittsburgh*, 713 F.Supp. 139, 145 (W.D.Pa.1989), *aff'd*, 882 F.2d 74 (3d Cir. 1989). The Court agrees that these claims should be dismissed. Moreover, because Count V was the only claim brought against Kinsey and Louden individually, they will be dismissed as Defendants from this action.

### B. Fekade's Claim for Retaliation

██ Count III of Fekade's Complaint alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1994). In order to prevail on such a claim, a plaintiff must demonstrate that: (1) she was engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse employment action. *See,*

*e.g., Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir.1999); *see also* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice under this subchapter, or because he has made a charge ... under this subchapter."). For the purposes of a motion for summary judgment, a plaintiff must establish, at a minimum, a genuine issue of material fact regarding each of these elements. Fekade's filing an EEOC claim clearly constitutes a statutorily protected activity, and the decision not to renew her contract amounts to an adverse employment action. The question therefore becomes whether a causal connection between those two events exists.

Louden recommended not renewing Fekade's contract on September 29, 1998. An internal peer review board agreed. On February 16, 1999, Winchester agreed as well. Fekade then filed her EEOC claim on February 22. On February 26, Donaldson approved Louden's recommendation. Fekade appealed that decision and the University's Judicial Committee upheld it on June 9.

██ Based on these facts, Fekade cannot establish a genuine issue of material fact concerning whether the adverse employment action occurred because of her filing her EEOC claim. The process of denying Fekade further employment had already been put in motion well before she filed her EEOC claim. Even if the approval of that decision by Donaldson and the University's Judicial Committee qualified as the actual adverse employment action, however, there is no evidence of record to establish a causal connection between those decisions and Fekade's filing her claim with the EEOC. The mere timing of those decisions, without more,

cannot establish this element of Fekade's prima facie case. Fekade's untimely Response has failed to highlight any record evidence suggesting that the decision not to renew her contract was taken in retaliation to her filing an EEOC complaint.

 Fekade also suggests that the decision not to renew her contract was made in retaliation against her "numerous memo[randa] to university officials regarding the harassment and discriminatory treatment she was experiencing in the Psychology department." Plf.'s Resp. at 14. Although Fekade fails to make any such memorandum part of the record, the Defendants did. *See* Defs.' Mot. for Summary Judgment Ex. I. In an August 12, 1998 memorandum to Winchester, which precedes Louden's initial recommendation by nearly six weeks, Fekade states in pertinent part that:

> This is a follow up to the previous memo[randa] I have written to you regarding the harassment and discrimination I have been subjected to. . . .
>
> . . . . .
>
> . . . Dr. Louden, unfortunately uses evaluation for retaliation and harassment purposes. His report is filled with distorted facts. . . . [His evaluation] is also the continuation of his personal harassment and punishment of me. . . .
>
> . . . . .
>
> Discrimination: I have indicated that starting from hiring/salary to other benefits and services there has been discrimination and differential treatments based on [my] national origin. I have notified this concern to the appropriate offices in various means for the last three years.

*Id.* This is the only record evidence of memoranda complaining of any mistreatment or discrimination. Assuming that this internal memorandum constitutes a protected activity, Fekade presents no evidence that there exists a causal connection between it and the adverse employment action. Her factually unsupported allegations will not help her survive the Defendants' Motion for Summary Judgment. Accordingly, judgment will be entered in favor of the Defendants and against Fekade on Count III of her Complaint.

### C. *Fekade's Remaining Claims of National Origin Discrimination*

 Counts I, II and VI of Fekade's Complaint allege national origin discrimination in violation of: (1) 42 U.S.C. § 2000e–2(a)(1); (2) 42 U.S.C. § 2000e–2(a)(2); and (3) the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons.Stat. Ann. §§ 951–963 (West 1991). In those claims, Fekade alleges that the University intentionally subjected her to disparate treatment because of her national origin. The *McDonnell Douglas* scheme of shifting burdens of production and persuasion controls the analysis of these claims.[7] *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Under the general burden-shifting scheme in an individual disparate treatment claim where no direct evidence of discrimination exists, the plaintiff must begin by proving her prima facie case of discrimination by a preponderance of the evidence. *Texas Dep't of Cmty.*

---

**7.** The shifting burdens of proof involved in Fekade's state law claim mirror those in her federal causes of action. *See, e.g., Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir.1995); *Chmill v. City of Pittsburgh*, 488 Pa. 470, 412 A.2d 860, 871 (1980);

*Kryeski v. Schott Glass Techs., Inc.*, 426 Pa.Super. 105, 626 A.2d 595, 598 (1993). The Court will therefore examine all three of Fekade's remaining claims under the same framework.

*Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The elements of the prima facie case will vary depending on the facts alleged and the type of claim presented. If the plaintiff cannot meet this burden, her claim must fail. Satisfying this burden, however, dispenses with the most common nondiscriminatory reasons for adverse employment actions and accordingly gives rise to a rebuttable presumption of discriminatory intent. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Although the ultimate burden of persuasion still remains with the plaintiff, the burden shifts to the defendant to produce a legitimate non-discriminatory reason for the adverse employment decision. *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. This is merely a burden of production; the defendant need not prove that this was the actual reason for the adverse employment action. *Burdine* 450 U.S. at 260, 101 S.Ct. 1089. In the unusual scenario where a defendant cannot produce such a reason, judgment in favor of the plaintiff is appropriate. If the defendant can, however, the presumption of discriminatory intent is rebutted and drops from the case entirely. *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. 1089.

■ The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's motivation for the adverse employment action was discriminatory. *Reeves,* 530 U.S. at 142–49, 120 S.Ct. 2097. To do this, the employee must prove by a preponderance of the evidence that the employer's legitimate non-discriminatory reason was pretextual. *Id.* Although a plaintiff may also present additional evidence of discriminatory animus, he may, if he chooses, rely solely on a showing of pretext in order to prove discriminatory intent. *Id.* (rejecting the "pretext plus" requirement adopted by many courts). The outcome of the case turns on whether the plaintiff can prove discriminatory intent; if he cannot, judgment in favor of the defendant is appropriate.

■ In the context of a motion for summary judgment, a defendant in this kind of case may prevail in one of two ways. First, the defendant may show that the plaintiff can raise no genuine issue of fact as to one or more elements of his prima facie case. *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir. 1988). Second, the defendant may present a legitimate non-discriminatory reason for its actions and then show that the plaintiff can raise no genuine issue of material fact as to whether the proffered reason is a pretext for discrimination. *Id.* Stated conversely, if the plaintiff shows that such genuine issues of fact do exist, summary judgment is inappropriate.

### 1. *Fekade's Prima Facie Case*

■ In the instant case, Fekade's national origin discrimination prima facie case requires her to prove that: (1) she was a member of a protected class; (2) she was qualified for and satisfactorily performed her job; (3) she suffered an adverse employment action;[8] and (4) the

---

**8.** The relevant unlawful employment action would differ depending on the statute implicated. For example, under 42 U.S.C. § 2000e–2(a)(1), employers may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his … terms, conditions, or privileges of employment because of such individual's race, color … or national origin." *Id.* Under 42 U.S.C. § 2000e–2(a)(2), however, employers may not "limit, segregate, or classify … employees or applicants … in any way which would deprive or tend to deprive any individual of employment opportunities … because of race, color … or national origin." *Id.*

circumstances of the adverse employment action would give rise to an inference of discrimination. *See, e.g., McDonnell Douglas,* 411 U.S. at 802 & n. 13, 93 S.Ct. 1817 (explaining the prima facie case will often vary depending on cases' unique facts). Although the evidence of record demonstrates that Fekade was a member of a protected class, was minimally qualified for her position and suffered an adverse employment action, there is no genuine issue of fact concerning whether the circumstances in this case give rise to an inference of discrimination. They do not.

 The evidence offered directly against Louden does not suggest national origin discrimination at all, but rather sex discrimination, which Fekade has not sought as an independent claim. Because Fekade's EEOC complaint did not raise sexual discrimination or facts sufficient to support such a claim, she cannot bring such a claim now, even tangentially. *Cf. Hopson v. Dollar Bank,* 994 F.Supp. 332, 337–38 (W.D.Pa.1997). Thus, the only evidence of national origin discrimination is that relating to Kinsey and the University's decision not to renew Fekade's contract. With regard to Kinsey, Fekade alleges that she: (1) negotiated a lower salary because Fekade was Ethiopian; (2) denied her research grant money; (3) told her not to speak during departmental staff meetings; (4) often referred to her as a "foreigner"; and (5) wrote an unfairly negative evaluation of her performance. Assuming that none of these actions were time-barred by the statute of limitations, an issue neither party has addressed, the only admissible evidence that would tend to show

that they were motivated by discriminatory animus is Fekade's own testimony regarding Kinsey's allegedly referring to Fekade as a foreigner.[9] Though Fekade did start work with a slightly lower salary than Dade, an African–American, Dade came to the University from a tenured teaching position at another school. Fekade has presented no admissible evidence, other than Dade's race, that this salary discrepancy was the product of national origin discrimination. In short, because Fekade's bald face allegations are not borne out by the record, she has failed to present a genuine issue of fact regarding whether her adverse employment actions were the result of national origin discrimination. Accordingly, summary judgment will be entered in favor of the Defendants and against Fekade on Counts I, II and VI of her Complaint.

### 2. *The Defendants' Legitimate Non-discriminatory Reason*

 In defense of their decision not to renew Fekade's contract, the Defendants offer Fekade's actions immediately preceding that decision. Specifically, the Defendants point to her proposed change in schedule, and her refusal to attend her classes or order school books for her students, as their legitimate non-discriminatory reason for not renewing her contract. The Defendants have therefore satisfied their burden of producing a non-discriminatory reason for their actions. The burden then falls on Fekade to present, at a minimum, a genuine issue of material fact concerning whether that proffered reason

---

**9.** Fekade has offered no admissible record evidence of Kinsey's alleged admission during a staff meeting that she did not like to hire foreigners. Nor does the suggestion that the reference to "our students" in Kinsey's evaluation of Fekade indicate discriminatory motivation without some scintilla of record evidence to corroborate Fekade's claim that Kinsey often referred to the University's students as "our students" in an attempt to ostracize foreign professors. Fekade has brought no such evidence to the Court's attention. *See* Plf.'s Resp. at 3 n. 1.

is pretextual or that the Defendants' true motivation was discriminatory.

Although Fekade's untimely Response pays lip service to the prima facie elements of her discrimination claim, it wholly ignores the fact that the Defendants' proffered legitimate non-discriminatory reason is also relevant to the instant motion. Indeed, Fekade's Response does not address these events at all. Fekade directs the Court to no record evidence that would contradict the Defendants' version of the facts surrounding her desire to change her class schedule and her refusal to either attend class or order textbooks for her students. No evidence made part of the record presents a triable issue of fact regarding whether this reason is pretextual. Accordingly, even if Fekade had presented genuine issues of material fact concerning each element of her prima facie case, she would not succeed because she has not met her burden of refuting the legitimacy of the Defendants' proffered legitimate non-discriminatory reason for the adverse employment action. Summary judgment will therefore be entered in favor of the Defendants and against Fekade on Counts I, II and VI of her Complaint.

### ORDER

AND NOW, this ———— day of April, 2001, in consideration of the Motion for Summary Judgment filed by the Defendants, Lincoln University, Dr. Delroy Louden and Dr. Penelope Kinsey (Doc. No. 7), the Response and Complaint filed by the Plaintiff, Dr. Abeba Fekade, and Defendants' Opposition to Plaintiff's Filing of Plaintiff's Response, it is ORDERED that:

1. The Defendants' Motion for Summary Judgment is GRANTED.

2. Summary judgment is ENTERED in favor of the Defendants Lincoln University, Dr. Delroy Louden and Dr. Penelope Kinsey, and against

the Plaintiff, on all Counts of the Plaintiff's Complaint.