IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Human Services, : 
        Petitioner : 
     : 
    v. : No. 45 C.D. 2022
     : 
Cynthia Rodriguez (State Civil : Submitted: September 9, 2025
Service Commission), : 
        Respondent : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: October 20, 2025

The Department of Human Services (DHS) petitions for review of the December 23, 2021 order of the State Civil Service Commission (Commission) that sustained the appeal of Cynthia Rodriguez (Respondent) of her non-selection for appointment to Income Maintenance (IM) Caseworker with DHS in the Cumberland County Assistance Office (CCAO) and overruled DHS' action in the non-selection. On appeal, DHS argues the Commission erred in concluding Respondent presented evidence establishing a *prima facie* case of discrimination based on her national origin under Section 2704 of the Civil Service Reform Act[1] (Act), 71 Pa.C.S. § 2704. After careful review, we reverse the Commission's order and reinstate DHS' action in the non-selection.

---

[1] 71 Pa.C.S. §§ 2101-3304.

## Background

The relevant facts and procedural history of this case are as follows. Respondent is an "Afro Latina" candidate who applied for the IM Caseworker position in August of 2020. Respondent was one of twenty candidates who had preliminary phone interviews for the position with IM Administrator Mark Dolheimer and IM Casework Supervisor Jamie Herrera. Each candidate was asked the following two questions during a fifteen-minute interview:

> 1. What background and experience do you have with using a computer for data entry of information and using computer applications such as Microsoft Outlook, Excel and Word?
>
> 2. Solid Customer Service Skills are very important in this position. What comes to mind when you think of good customer service?

(Reproduced Record (R.R.) at 87a.) Mr. Dolheimer and Ms. Herrera rated each of the applicants' answers on a sliding scale of excellent, above average, average, or below average using three criteria: (1) experience, training, and education relevant to the job/field; (2) interpersonal skills; and (3) communication abilities. (R.R. at 86a.)

During Respondent's August 13, 2020 telephone interview, Mr. Dolheimer and Ms. Herrera both rated Respondent's answers as either average or below average. Mr. Dolheimer's handwritten notes on his interview worksheet stated that Respondent had: "computer experience, unclear if relevant experience; polite, conveyed very briefly, good customer service; poor communication, dangled [sic] statements raised more questions, unclear ability, bilingual in what language?" (R.R. at 86a.) Ms. Herrera noted: "20+ years [of] Microsoft Office Suites, Data entry = very

2

good typist, Liaison for City Council, Dep. Secretary;[2] Listen carefully, clarifying questions, work towards solutions. Certified Medical Interpreter through [University of Pittsburgh Medical Center]- language unk[own]; friendly, professional, incomplete answers - lacking details." (R.R. at 101a.)

After completing the twenty telephone interviews, Mr. Dolheimer and Ms. Herrera chose six candidates who scored above average or overall excellent in each category to advance to final interviews. The two candidates that were eventually hired for the IM Caseworker position were Caucasian and were not bilingual in Spanish. On August 17, 2020, Respondent was informed that she was not selected for the position.

On August 19, 2020, Respondent filed an appeal alleging that she did not advance to the final round of interviews due to her national origin.[3] The Hearing Officer for the Commission held a hearing on March 19, 2021, at which Respondent proceeded *pro se*. Respondent testified that she presently works at a small company as a compliance manager in the home healthcare field. (R.R. at 26a.) Respondent recounted that she worked for the Commonwealth at the beginning of her career, and that she held a number of state positions before she left to work in the private sector. (R.R. at 28a.) Respondent testified that during the telephone interview for the IM Caseworker position she expressed that she is bilingual in Spanish and English and is a certified interpreter in the medical field. (R.R. at 32a, 63a.) Respondent indicated her frustration in not advancing in the interview process, stating:

---

[2] This appears to be a reference to Respondent's former position of Consumer Liaison Administrative Officer 3 for the Department of Banking's Deputy Secretary and City Council. *See* Commission's Decision, 12/23/21, at 5.

[3] Respondent also appealed her non-selection on grounds of age discrimination and technical discrimination of the Act. However, because the Commission dismissed these claims, the only issue on appeal is the Commission's finding of national origin discrimination. (*See* Commission's Decision, at 24, 27.)

3

I'm not getting a formal interview. I'm not moving forward. So there's two things to question. Is it because of my age or is it because I'm an Afro Latina in a predominantly Caucasian Environment?

\* \* \*

I don't understand why I was never given a formal interview. I was never given an opportunity because — **and I think that's discriminatory** because when you exclude someone, That's — you're practicing discrimination. I don't have — as I said, I don't have access to what you have access as far as data, but **I'm curious to know why. And the only conclusion I can come up with** — because I've had other friends that applied for the state with similar backgrounds, and they've been called for interviews.

(R.R. at 32-34a, 36a) (emphasis added). Respondent acknowledged that three of her friends who advanced to formal interviews for state positions were Dominican or African American. (R.R. at 35-36a.)

When Respondent was asked if she knew any information relating to the applicants who advanced to a formal interview for the IM Caseworker position, she stated:

**No, that's — that's not information that would be given to the public** and right now I'm the public. If I was a recruiter within the Commonwealth, then I could pull the list and see, I but I'm not sure. . . . **I can bet on it. I can rest assured that none of them were — I bet you that none of them were older than 40 and none of them were Hispanic female.**

Q. How do you know that? You're just speculating. Correct?

A. **I'm speculating**, but I can — **I'm speculating**.

4

(R.R. at 51) (emphasis added). Respondent further testified that although the appeal materials the Commission sent to her contained information about the subpoena process, she did not know she could request access to this type of hiring data. (R.R. at 52a-55a.)

Respondent rested her case without providing the testimony of any other witnesses or introducing exhibits into evidence. (R.R. at 81a-82a.) Following Respondent's case in chief, DHS moved to dismiss the case, arguing that she failed to present a *prima facie* case of discrimination. The Hearing Officer deferred ruling on the motion pending review by the full Commission.

On December 23, 2021, the Commission entered its decision finding Respondent presented evidence establishing national origin discrimination in violation of Section 2704 of the Act. (Commission's Decision, at 28.) In reaching this conclusion, the Commission applied the criterion for assessing national origin discrimination claims set forth in a United States District Court case, *Fekade v. Lincoln University*, 167 F. Supp.2d 731 (E.D. Pa. 2001), which concerned an Equal Employment Opportunity Commission (EEOC) complaint.[4] *Id.* at 20-21. Additionally, in finding discriminatory conduct on the part of DHS, the Commission emphasized its concern that the interviewers' comments reflected an undervaluing of Respondent's bilingual skills, which, in its view, demonstrated an implicit bias against her as a candidate. *Id.* at 22-23. Consistent with these determinations, the Commission sustained Respondent's appeal challenging her non-selection for appointment to the IM Caseworker position, overruled DHS' action in the non-selection and ordered DHS

---

[4] In *Fekade*, the plaintiff filed an EEOC complaint alleging various forms of national origin discrimination based on 42 U.S.C. §§ 2000e–2(a)(1) and (a)(2) (relating to unlawful employment practices), and the Pennsylvania Human Relations Act, 43 Pa. C. S. §§ 951–963. 167 F. Supp.2d at 737, 740.

5

to include Respondent in the final round of interviews for the next available IM Caseworker position at the CCAO. This petition for review followed.

## Discussion[5]

On appeal, DHS challenges the Commission's determination that Respondent established a *prima facie* case of national origin discrimination under Section 2704 of the Act. DHS argues that Respondent failed to present any affirmative evidence to support her bare allegation of discrimination, in that she never specifically explained how she was treated differently from the 19 other candidates who competed in the telephone interview process and instead merely speculated that the candidates who advanced to the formal interviews were not Hispanic females. DHS maintains that Respondent's interview ratings were appropriately based on her responses to the two actual questions posed to all candidates concerning their computer and customer service skills. DHS highlights the fact that Respondent's Spanish speaking ability was not relevant to the interview process, as the posted position did not seek bilingual candidates. DHS additionally contends that the Commission erroneously relied on non-binding, inapplicable federal law instead of on this Court's precedent and the

---

[5] We review the Commission's adjudications to determine whether the Commission violated constitutional rights, committed errors of law, or made factual findings unsupported by substantial evidence. The Commission is the sole fact finder in civil service cases and has exclusive authority to assess witness credibility and to resolve evidentiary conflicts. In evaluating whether the Commission committed an error of law, our standard of review is *de novo* and our scope of review is plenary. **In other words, we do not defer to the Commission's conclusions of law, and we reassess the record with a fresh pair of eyes**.

*Allegheny County Department of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024) (citations omitted; emphasis added).

6

Commission's own regulations in reaching its legal conclusions. (DHS' Brief, at 8-25.)[6]

We begin by noting that the purpose of our civil service system "is to create and sustain a modern merit system of employment within the Commonwealth workforce that promotes the hiring, retention and promotion of highly qualified individuals, ensuring that government services are efficiently and effectively delivered to the public." 71 Pa.C.S. § 2102. At issue in this case is Section 2704 of the Act, which states:

> An officer or employee of the Commonwealth may not discriminate against an individual in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of race, gender, religion, disability or political, partisan or labor union affiliation **or other nonmerit factors**.

71 Pa.C.S. § 2704 (emphasis added).[7]

The Act prohibits both "traditional" discrimination, which occurs when an employer discriminates against an employee based on nonmerit factors such as race, and "technical" discrimination, which involves claims based on procedural violations of the Act or related regulations. *Allegheny County Department of Health*, 329 A.3d at 117. The complainant bears the initial burden of establishing a *prima facie* case of traditional discrimination. *Id.* A complainant satisfies this burden by producing

---

[6] Although DHS raises additional arguments in its brief, we need not address them in light of our disposition of this appeal.

[7] Merit criteria are standards relevant to the proper execution of an employee's duties, and touch in some logical manner upon the employee's competency and ability to perform her job. *Department of Corrections v. Lynn*, 306 A.3d 338, 345 (Pa. 2023). While national origin is not specifically enumerated as a nonmerit factor in Section 2704, it plainly falls under the same anti-discrimination umbrella as race.

sufficient evidence that, "if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred." *Lynn*, 306 A.3d at 358. "If the complainant is successful, a presumption of discrimination arises which, if not rebutted by the appointing authority, becomes determinative of the factual issue of the case." *Id.*

We emphasize that, although a complainant's initial burden is not onerous, "the complainant must allege **specific facts showing treatment disparate from others similarly situated**" in order to establish a *prima facie* case and avoid dismissal. *Id.* (emphasis added). To this end, Section 105.12 of the Commission's regulations provide:

> (c) Appeals alleging discrimination which do not **include specific facts relating to discrimination may be dismissed**. Specific facts which should appear on the appeal form include:
>
> (1) The acts complained of.
>
> (2) **How the treatment differs from treatment of others similarly situated**.
>
> (3) When the acts occurred.
>
> (4) When and how the appellant first became aware of the alleged discrimination.

4 Pa. Code § 105.12(c)(1)-(4) (emphasis added).

Here, Respondent openly acknowledged during her testimony that she did not know any information about the applicants who competed against her for the IM Caseworker position, and that she was merely "speculating" as to their relative qualifications and their national origins. Thus, she failed to present "specific facts relating to . . . how the treatment differs from treatment of others similarly situated[,]"

8

as is required by applicable caselaw and the Commission's regulations. 4 Pa. Code § 105.12(c)(2); *see also Lynn*, 306 A.3d at 358. Although Respondent asserted that she had no access to information concerning the other applicants, she conceded that the Commission provided her with materials outlining the subpoena process, through which she could have requested this information.

With respect to Respondent's emphasis on her bilingual status and certification as an interpreter in the medical field as unique qualifying factors over other candidates, she did not explain how these skills were relevant to the job duties required for the position. Further, there is no indication that the IM Caseworker job posting sought bilingual applicants, and the only two questions posed to all candidates during the telephone interview concerned computer and customer service skills—not language ability. The record likewise does not demonstrate a lack of equal treatment in the interview process itself, in that all candidates were asked the same two questions by the same two interviewers, both of whom evaluated Respondent's responses as average or below average using the same set of criteria. In contrast, the six candidates who advanced to formal interviews were rated overall excellent or above average by both interviewers.

We also highlight that Respondent, while simultaneously arguing that the Commonwealth engaged in discriminatory hiring practices, also testified that she has three Dominican and African American friends who advanced to formal interviews for state positions, further undercutting her claim of hiring practices based on nonmerit factors. In short, Respondent presented no evidentiary support for her admittedly speculative claims and therefore did not meet her burden of establishing a *prima facie* case of traditional discrimination. *See Allegheny County Department of Health*, 329 A.3d at 117.

In reaching its decision to the contrary, the Commission applied criteria outlined in a federal district court case addressing national origin discrimination claims brought pursuant to different statutes than the provision at issue here. (Commission Decision, 20-21). The Commission's findings wholly dispensed with the requirement under Pennsylvania law that Respondent must identify "specific facts showing treatment disparate from others similarly situated" in order to establish a *prima facie* case of discrimination under Section 2704. *Lynn*, 306 A.3d at 358; 4 Pa. Code § 105.12(c)(2). Therefore, based on the foregoing, we conclude the Commission erred in determining that Respondent established a *prima facie* case of national origin discrimination in violation of Section 2704 of the Act during the IM Caseworker interview process. Accordingly, we reverse the Commission's order and reinstate DHS' action in the non-selection of Respondent for appointment to the IM Caseworker position.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Human Services,     :
          Petitioner     :
                      :
         v.          :   No. 45 C.D. 2022
                      :
Cynthia Rodriguez (State Civil     :
Service Commission),     :
          Respondent     :

## *<u>ORDER</u>*

AND NOW, this 20ᵗʰ day of October, 2025, the December 23, 2021 order of the State Civil Service Commission is hereby REVERSED, and the action of the Department of Human Services in the non-selection of Cynthia Rodriguez for the position of Income Maintenance Caseworker is hereby reinstated.

_____
PATRICIA A. McCULLOUGH, Judge