J-A20007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANTOINETTE CANDELARIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE HOSPITAL OF THE UNIVERSITY | : | |
| OF PENNSYLVANIA, THE UNIVERSITY | : | |
| OF PENNSYLVANIA HEALTH SYSTEM | : | No. 2197 EDA 2021 |
| AND THE TRUSTEES OF THE | : | |
| UNIVERSITY OF PENNSYLVANIA, | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered April 9, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  180901319

BEFORE:   STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED SEPTEMBER 16, 2022**

The Hospital of the University of Pennsylvania, the University of Pennsylvania Health System, and the Trustees of the University of Pennsylvania (collectively, Appellants), appeal from the order entered in the Philadelphia County Court of Common Pleas on April 9, 2021, denying their motion for summary judgment.  After careful review, we reverse and remand for the entry of summary judgment in favor of Appellants.

We glean the following factual and procedural history from the record. Antionette Candelaria (Appellee) initiated this civil action on December 2, 2019, with the filing of a complaint against Appellants, her former employer,

_____

[*] Retired Senior Judge assigned to the Superior Court.

alleging negligence and loss of consortium. The loss of consortium claim was dismissed on February 17, 2021, leaving only the negligence claim at issue. Appellee alleged in her complaint that Appellants failed to investigate her allegations regarding the inappropriate conduct of her then co-worker, James Esposito. Specifically, Appellee alleged that in November of 2016, Mr. Esposito "grabbed his crotch and exposed his naked penis" to her. Complaint, 12/2/19, at ¶ 17. Appellee "immediately expressed her revulsion at his behavior" and reported him to her department manager. *Id.* at ¶ 18. Her manager then allegedly reported the incident to Appellants' human resources department; however, no one from human resources ever contacted Appellee. *Id.* at ¶¶ 19-20. She further averred that no disciplinary actions were taken against Mr. Esposito. *Id.* at ¶ 21. Appellee stated Mr. Esposito "continued his vulgar verbal taunting and sexual [*sic*] inappropriate gestures" throughout the remainder of November 2016 and into January 2017. *Id.* at ¶¶ 23-24. She also alleged "[Mr.] Esposito even had the audacity to shoulder check [her] in the hallway while she was with a patient." *Id.* at ¶ 25. Appellee submitted that despite her "numerous reports of sexual harassment and discrimination, [Appellants] took no meaningful action to curtail [Mr. Esposito's] behavior[,]" causing her to resign in January of 2017. *Id.* at ¶¶ 27-28.

On March 1, 2021, Appellants moved for summary judgment seeking dismissal of the complaint on the grounds that "[Appellee's] action is premised on conduct that falls squarely within the scope of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S. §[§] 951[-963]*,* and the jurisdiction of the

Pennsylvania Human Relations Commission ("PHRC"). Motion for Summary Judgment ("MSJ"), 3/1/21, at ¶ 2. Appellants asserted that Appellee had "attempted to bypass the legislature's carefully crafted administrative framework by asserting a common law negligence claim rather than asserting a proper claim under the PHRA[,]" and that the complaint must be dismissed, as the PHRA preempts common law causes of action. *Id.* at ¶¶ 3-5. Alternatively, Appellants argued that Appellee "cannot establish a claim for negligence as a matter of law[,]" as Pennsylvania courts have not recognized "an employer's duty to provide a workplace free of sexual harassment outside of the PHRA (or the analogous Title VII of the Civil Rights Act of 1964[, 42 U.S.C. §§ 2000e-1 to 2000e-17])." *Id.* at ¶¶ 6-7.

On April 9, 2021, the trial court denied Appellants' motion for summary judgment, finding that a genuine issue of material fact persisted, *i.e.*, whether the actions of Mr. Esposito were targeted towards women. *See* Order, 4/9/21 (single page); Trial Ct. Op., 4/4/22, at 2-3 (unpaginated). On June 30, 2021, Appellants timely filed a petition for permission to appeal,[1] which was granted

---

[1] On May 6, 2021, pursuant to Pa.R.A.P. 1311(b), Appellants filed a motion to amend the language of the April 9, 2021, order to include the language specified in 42 Pa.C.S. § 702(b) that would permit them to appeal. *See* 42 Pa.C.S. § 702(b) ("When a court . . ., in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order."). The trial court denied Appellants' motion to amend on June 3, 2021. *See* Pa.R.A.P. 1311(a)(1) (allowing an appeal by permission from an interlocutory order for which certification pursuant to 42 Pa.C.S. § 702(b) was denied).

- 3 -

by this Court on November 4, 2021. The trial court directed Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. They timely complied. On April 4, 2022, the trial court filed its Rule 1925(a) opinion.

Appellants now present the following sole issue for our review on appeal: "Whether [Appellee]'s negligence claim—premised on an alleged sexually hostile work environment—must be dismissed because the [PHRA] preempts such a claim as a matter of law and because no common law duty exists to support [her] negligence claim?" Appellants' Brief at 4.

We review the merits of Appellants' claim mindful of the following, well-settled principles:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Michael v. Stock*, 162 A.3d 465, 472-73 (Pa. Super. 2017) (citation omitted).

Instantly, Appellants claim that the trial court erred in denying its motion for summary judgment, because Appellee's "negligence claim" is essentially a sexual harassment claim which falls squarely within the scope of

the PHRA and the jurisdiction of the PHRC. Appellants' Brief at 10. In support of its argument, Appellants note that Appellee references sexual harassment and the creation of a hostile work environment numerous times in her complaint. ***Id.*** at 16. Additionally, they point to Appellee's deposition testimony, in which she stated that "Mr. Esposito sexually harassed her and that her negligence claim was premised on Mr. Esposito's behavior and [Appellants'] failure to respond to her reports of sexual harassment . . . ." ***Id.*** at 17, *citing* N.T. Deposition, 10/26/20, at 70-71. Despite her admission that her claim is based on alleged sexual harassment, Appellants argue that Appellee "has ignored the fact that the PHRA is the exclusive remedy for her claims and, instead, attempted to assert a common law claim for negligence against [them]." ***Id.*** at 10. Moreover, they assert that her negligence claim fails, as there is no common law duty to provide a "safe workplace," as alleged by Appellee. ***Id.*** at 20-21. Finally, Appellants contend that, "[b]ecause no duty exists at common law for an employer to maintain a safe workplace that is free from sexual harassment, [Appellee] cannot establish . . . negligence . . . as a matter of law[,]" and the trial court's denial of its request for summary judgment should be reversed. ***Id.*** at 21-22. We agree.

Section 955 of the PHRA provides, in relevant part: "It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, … [f]or any employer because of . . . sex . . . to otherwise discriminate against such individual . . . with respect to . . . conditions or privileges of employment . . . ." 43 P.S. § 955(a). The PHRA establishes a

right to a remedy for discrimination in employment because of sex and prescribes the **exclusive** procedures by which such rights shall be enforced. **See** 43 P.S. § 953 ("The opportunity for an individual to obtain employment for which he is qualified . . . without discrimination because of . . . sex . . . is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act."); 43 P.S. § 962(b) (providing, as to acts declared unlawful by Section 955 of the PHRA, "the procedure herein provided shall . . . be exclusive").

In **Clay v. Advanced Computer Applications, Inc.**, 559 A.2d 917 (Pa. 1989), the Pennsylvania Supreme Court made it clear that an employee **must** exhaust the remedies provided for under the PHRA before commencing an action in state court. It explained that to allow otherwise would frustrate the statutory scheme of the PHRA and "would result in the very sort of burdensome, inefficient, time consuming, and expensive litigation that the PHRC was designed to avert . . . ." **Id.** at 920. The Court further reasoned that,

> by requiring initial utilization of administrative remedies, aggrieved parties are not deprived of their ultimate resort to the courts. It is provided in [S]ection 962(c) of the PHRA that the rights of a complainant thereunder shall not be foreclosed from being pursued in the courts, if, within one year after the filing of a complaint, the PHRC dismisses the complaint or fails to enter a conciliation agreement to which the complainant is a party. 43 P.S. § 962(c). The purpose for providing final, rather than initial, resort to the courts was described in **Lukus v. Westinghouse Electric Corp.**, 419 A.2d 431, 455 ([Pa. Super.] 1980) (citation omitted):

The legislative history of [S]ection 962(c) shows that the Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRA for a period of one year in order to conduct an investigation of the charges and, if possible, conciliate the matter. 1974 Pa.Legis.J. 6396-98. The reasons the Legislature chose . . . to postpone a complainant's right to seek redress by an action in court are clear. The PHRC possesses a "particular expertise" in the area of unlawful discrimination not possessed by the courts. By requiring a complainant first to [report] to the PHRC, the Legislature ensured maximum use of the PHRC's expertise, thereby minimizing the inefficient use of judicial resources (and its attendant expense and embarrassment of the parties). In other words, the rationale of the principle of exhaustion of administrative remedies, applicable to other areas of administrative law, is also applicable to actions brought under section 962(c) of the PHRA.

*Id.* *See also Weaver v. Harpster*, 975 A.2d 555, 569 n.13 (Pa. 2009) (underscoring "the [L]egislature's clear intention to preempt a common law cause of action for unlawful sex discrimination").

Based on the foregoing, there is no question that where an action falls within its scope, the PHRA preempts a common law tort claim, and a complaint must first be filed with the PHRC. Hence, the determining factor in this matter is whether the allegations set forth in Appellee's complaint constitute an actionable claim within the ambit of the PHRA. For the following reasons, we believe that they do.

The prohibition of discrimination on the basis of sex outlined in Section 955(a) of the PHRA "has been interpreted to include sexual harassment that is severe or pervasive enough to create a hostile work environment." *Philadelphia Housing Authority v. American Federation of State,*

*County and Municipal Employees*, 956 A.2d 477, 484 (Pa. Commw. 2008).[2]  "Hostile environment sexual harassment occurs when unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile or offensive working environment." *Hoy v. Angelone*, 691 A.2d 476, 480 (Pa. Super. 1997) (citation omitted).  *See also Renna v. PPL Electric Utilities, Inc.*, 207 A.3d 355, 368 (Pa. Super. 2019) (recognizing a hostile work environment as a form of discrimination and a cognizable claim under the PHRA).

"The basis of an employer's liability for hostile environment . . . harassment depends on whether the harasser is the victim's supervisor or merely a coworker." *Renna*, 207 A.3d at 368, *quoting Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).[3]  Where the harasser is a coworker, as in the instant matter, employer liability exists

> if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have

---

[2] Although decisions made by the Commonwealth Court are not binding on this Court, they may be considered for persuasive authority.  *See Kraus v. Taylor*, 710 A.2d 1142, 1144 (Pa. Super. 1998).

[3] Generally, PHRA claims are analyzed under the same standards as their federal counterparts.  Thus, while not binding on this Court, in interpreting the PHRA, we may look to federal court decisions interpreting Title VII of the Civil Rights Act of 1964.  *See Kroptavich v. Pennsylvania Power and Light Co.*, 795 A.2d 1048, 1055 (Pa. Super. 2002); *Hoy v. Angelone*, 691 A.2d 476, 480 (Pa. Super. 1997) (citations omitted).

known of the harassment and failed to take prompt and appropriate remedial action. That is, an employer may be directly liable for non-supervisory co-worker . . . harassment only if the employer was negligent in failing to discover the coworker harassment or in responding to a report of such harassment.

*Renna*, 207 A.3d at 368-69, *quoting* **Huston**, 568 F.3d at 104.

Thus, it is well-settled:

To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability.

**Mandel v. M & Q Packaging Corp.**, 706 F.3d 157, 167 (3d Cir. 2013). **See also Vazquez v. Carr & Duff, Inc.**, No. CV 16-1727, 2020 WL 3869731, at *3 (E.D. Pa. July 8, 2020).

Instantly, Appellee expressly avers in her complaint that Appellants "created, permitted, tolerated, encouraged and foster[ed] a sexually hostile, intimidating, demeaning, degrading, and demoralizing environment, which hostile environment was ongoing and pervasive from November 2016 until January 2017[.]" Complaint at ¶ 36(a). She further avers: (1) Appellants "failed to create and/or implement policies/procedures . . . to address workplace sexual/physical harassment," *id.* at ¶ 36(j); (2) they failed to "investigate sexual harassment claims," *id.* at ¶ 36(k); and (3) they "failed to deal expeditiously and fairly when they had knowledge of sexual harassment within [its] departments[.]" *Id.* at ¶ 36(l). Moreover, even in her deposition testimony, Appellee stated that she believed Mr. Esposito "sexually harassed"

her and acknowledged that she is suing Appellants because they failed to respond to her reports of sexual harassment. ***See*** N.T. Deposition at 128-29.

Thus, in her own words, Appellee's claim mirrors most of the requisite elements to establish a sexual harassment claim by way of hostile work environment. The only element in dispute is whether Appellee endured discrimination on the basis of sex. Notably, in her appellate brief, she insists that her claims are not based on sexual harassment or gender discrimination, and thus, the PHRA is not applicable. ***See*** Appellee's Brief at 7. She acknowledges that Mr. Esposito's behavior was "vulgar" but puzzlingly claims that his actions were not "of a sexual nature because of gender." ***Id.*** at 12. Instead, Appellee argues that Mr. Esposito's actions towards her were the result of "personal animus" and were not sexually motivated. ***Id.*** at 12-13, 15. ***See also id.*** at 13 (noting Mr. Esposito's conduct was "personally motivated" because Appellee was "well regarded by her peers and patients and [she] reported him after [his] telling an inappropriate 'joke'"). She explains:

> [T]here is no evidence that [Mr.] Esposito's conduct was sexually motivated. He did not sexually proposition [Appellee]. He did not make any sexual advances toward [her]. He was never involved in any type of romantic relationship with [her]. Instead, … [Mr.] Esposito's conduct may have been solely motivated by what he perceived to be criticism by a revered and respected co-worker, *i.e.*, personal animus.

***Id.*** at 15.

Similarly, in explaining its finding that a genuine issue of material fact persisted, *i.e.*, whether Mr. Esposito's actions were targeted towards women, the trial court opined:

> It is entirely conceivable that [Mr. Esposito] may have randomly uttered vulgar statements and exposed himself to other employees regardless of their sex or gender. If [Mr. Esposito] was opportunistic rather than targeted and [Appellee's] matter was dismissed for not initiating a complaint with the PHRC[] because she is a woman, yet allowing a nonprotected class to proceed immediately through the courts, such results would inflict greater harm than that which was intended to be remedied by enactment of the PHRA.

TCO at 3 (unpaginated).

We reject both Appellee's argument and the trial court's reasoning in support of its refusal to grant Appellants summary judgment. Contrary to their suggestion, sexual motivation of the harasser is not a prerequisite to establishing a claim for sexual harassment. In fact, the Third Circuit pronounced that "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual[ly] derogatory language is implicit, and thus should be recognized as a matter of course." **Vazquez**, 2020 WL 3869731 at *4, *quoting **Moody v. Atlantic City Board of Education***, 870 F.3d 206, 214 (3d. Cir. 2017). **See also id.** ("When the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied in determining whether harassment occurred on the basis of sex.") (cleaned up; citation omitted). There is no question that Mr. Esposito's alleged conduct towards Appellee was of a sexual nature; thus, discrimination on the basis of sex is implicit.

- 11 -

Accordingly, we reverse the trial court's April 9, 2021, order denying Appellants' motion for summary judgment and remand with instructions for the trial court to enter summary judgment in favor of them.[4]

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judge Pellegrini joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2022

---

[4] As a result of our determination that Appellee's claim falls within the scope of the PHRA, we need not address Appellants' argument that Appellee failed to establish a common law claim for negligence. **See Clay**, **supra** (clarifying the PHRA preempts a common law tort action).  However, we would agree with Appellants that her complaint failed to identify a common law duty that was allegedly breached by them. **See Ford v. Oliver**, 176 A.3d 891, 905 (Pa. Super. 2017) ("Under Pennsylvania law[, i]n order to hold a defendant liable for negligence, the plaintiff must prove[, *inter alia*,] a legally recognized duty that defendant conform to a standard of care [and that] the defendant breached that duty . . . .").